HUGGETT v DEPARTMENT OF NATURAL RESOURCES

Docket No. 195548. Submitted May 5, 1998, at Lansing. Decided October
16, 1998, at 9:00 A.M. Leave to appeal sought.

Wallace A. Huggett and Huggett Sod Farm, the owners of a wetland
subject to a reversionary interest of the state of Michigan should
the land be used for a purpose other than peat farming, brought an
action in the Cheboygan Circuit Court against the Department of
Natural Resources after the department denied their application for
a permit under the wetland protection act (WPA), MCL 324.30301 *et
seq.*; MSA 13A.30301 *et seq.*, that would allow the plaintiffs to start
a cranberry farm on the wetland. The plaintiffs sought a declara-
tion that, pursuant to the farming exemption from the permit
requirement of the WPA, MCL 324.30305(2)(e); MSA 13A.30305(2)(e),
no permit was required for the proposed activity. The plaintiffs also
sought a declaration that the state's interest in the wetland, which
arose as a condition annexed to the state's conveyance of the wet-
land to the plaintiffs' predecessor in interest, was nominal and
unenforceable. The court, Robert C. Livo, J., granted the requested
declaratory judgment. The department appealed, and the plaintiffs
cross appealed to claim that the state's interest in the wetland is
unenforceable because it violates the rule against perpetuities.

The Court of Appeals *held*:

1. The trial court properly refused to require the plaintiffs to
exhaust administrative remedies in the department. The issue
whether the proposed activity is exempt from the permit require-
ments of the WPA is a legal question that does not call for extensive
findings of fact or technical expertise. Requiring the exhaustion of
administrative remedies in this case would be nothing more than a
formal step on the way to the courthouse.

2. The farming exemption from the wetland permit requirement
applies only to wetlands already in agricultural use and does not
apply to the plaintiffs' wetland, which was not already in agricul-
tural use. The WPA was intended to enable the state to assume the
authority to administer the federal Clean Water Act. The WPA must
be enforced in accordance with, and be just as or more stringent
than, the Clean Water Act. The similarly worded federal farming

exemption statute, 33 USC 1344(f), applies only to ongoing, established farming operations; activities that convert an area into farmland or bring an area into farming use are not exempted. Additionally, language in the WPA itself indicates that references to "farming" are restricted to already existing farming operations.

3. Because in a prior mortgage foreclosure action Huggett stipulated that the state's interest in the wetland was superior to the plaintiffs' interest, res judicata bars relitigation of the issue whether the state's interest is nominal and unenforceable. In any event, the state's interest is not nominal. Adjoining landowners may place conditions on adjoining lands they transfer to protect their interest in preventing noxious business from being conducted thereon, or in having it improved in a certain manner. In this case, the state's interest in placing a condition on the use of the wetland it conveyed is not nominal because the state continues to own land adjoining the wetland.

4. Res judicata bars consideration of the issue whether the state's interest is unenforceable as being violative of the rule against perpetuities. In any event, rights of entry are generally not subject to the common-law rule against perpetuities. Michigan's statutory limitation placed on rights of entry is inapplicable because the plaintiffs' terminable interest was initially created in a conveyance from the state.

Affirmed in part and reversed in part.

WHITE, P.J., concurring in part and dissenting in part, stated that res judicata does not bar consideration of the issue whether the state's reversionary interest is enforceable. The prior proceeding was a foreclosure action in which Huggett's stipulation served as acknowledgment that the state's interest would survive the foreclosure proceeding and that the state's interest is superior to that of Huggett as mortgagee, but did not serve as acknowledgment that the state's interest was superior to that of Huggett as fee owner.

1. ADMINISTRATIVE LAW — JUDICIAL REVIEW —EXHAUSTION OF ADMINISTRATIVE REMEDIES.

Exhaustion of administrative remedies is not an inflexible condition precedent to judicial consideration and may not be required where the question presented is one of law and does not call for extensive findings of fact or technical expertise.

2. ENVIRONMENT — WETLAND PROTECTION ACT — PERMITS — FARMING EXEMPTION.

The farming exemption from the permit requirements of the wetland protection act applies only to wetlands already in agricultural use and therefore does not apply to wetlands for which a not yet existing agricultural use is proposed (MCL 324.30305[2][e]; MSA 13A.30305[2][e]).

3. ACTIONS — RES JUDICATA.

Res judicata bars relitigation of claims actually litigated and those claims arising out of the same transaction that could have been litigated; the test for determining whether two claims are identical for res judicata purposes is whether the same facts or evidence are essential to the maintenance of the claim.

*D. Haywood & Associates, P.C.* (by *David J. Haywood* and *Mark A. Cooley*), for the plaintiff.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *A. Michael Leffler* and *Stephen F. Schuesler*, Assistant Attorneys General, for the defendant.

Before: WHITE, P.J., and SAAD and MARKEY, JJ.

MARKEY, J. Defendant appeals as of right a declaratory judgment in favor of plaintiffs. We affirm in part and reverse in part.

In 1982, the state of Michigan, through defendant, deeded the wetland at issue to Michigan National Bank (MNB) in exchange for a parcel of land owned by MNB. The deed from the state to MNB included a condition that the land be used for peat farming and that if the condition were violated, the state had the right to reenter and retake the land. Plaintiffs later became owners of the wetland after MNB assigned its mortgage interest in the land to plaintiffs, and plaintiffs foreclosed the mortgage. Plaintiffs seek to construct a 200-acre, $6 million cranberry farm. The construction will consist of, among other things, building dikes,

digging ditches, and constructing a reservoir. The proposal also calls for some excavating and filling in of the wetland. Plaintiffs sought, but were denied, a wetland permit from defendant to begin the project, so they initiated the instant declaratory judgment action claiming, inter alia, that the proposed activity was exempt from the permit requirement of the wetland protection act (WPA), MCL 324.30301 *et seq.*;	MSA 13A.30301 *et seq.*,	and that the state's interest in the wetland was void because the condition placed in the deed is of nominal value to the state. The trial court agreed.

I

First, defendant claims that the trial court should have denied plaintiffs' claims because of plaintiffs' failure to exhaust the available administrative remedies. We disagree.

Plaintiffs applied for a permit to construct the cranberry farm. Defendant denied the application. Plaintiffs initiated contested case proceedings to challenge the denial of the permit, but before the conclusion of the contested case proceedings, plaintiffs filed the instant action in the circuit court.[1] Michigan courts have long recognized the importance of the doctrine of exhaustion of administrative remedies. *Int'l Business Machines Corp v Dep't of Treasury*, 75 Mich App 604, 608; 255 NW2d 702 (1977).	Exhaustion of administrative remedies is not an inflexible condition precedent to judicial consideration, however, and will not

---

[1] The contested case proceedings have been held in abeyance pending the resolution of this case.

be required if review of the agency's final decision would provide an inadequate remedy. *Id.*

In *Int'l Business Machines Corp*, this Court allowed the plaintiff to seek relief in the circuit court even though the available administrative remedies had not been exhausted because the plaintiff did not challenge the propriety of the agency action taken (declaration of tax liability). Instead, the plaintiff argued that the agency had no authority to take any action in the first place. Because the plaintiff sought to avoid submitting the dispute to the agency procedures, the "very harm that plaintiff seeks to avoid would inevitably occur if plaintiff were required to exhaust administrative remedies before access to judicial review." *Id.* at 610. This Court also considered whether the agency's statutory authority to act was clearly framed for the circuit court, whether extensive findings of fact were unnecessary, and whether a resolution of the issue did not demand special technical expertise. *Id.*; see also *Universal Am-Can Ltd v Attorney General*, 197 Mich App 34, 38-39; 494 NW2d 787 (1992) (holding that where the plaintiff claimed that the agency lacked statutory authority to regulate the plaintiff's activity, "both judicial economy and the interests of justice supported the plaintiff's actions in filing a complaint in the circuit court for declaratory relief").

In the case at bar, we believe that plaintiffs' claim in the circuit court was proper even though they had not exhausted the available administrative remedies. In the circuit court, plaintiffs did not challenge the propriety of defendant's denial of the permit but sought a declaration that defendant had no statutory

authority to require a permit in the first place. Plaintiffs' argument is that the Legislature exempted the proposed activity from defendant's regulation. While copious testimony was admitted at trial, the issue was clearly framed for the court as one of law (statutory interpretation) that did not call for extensive findings of fact or technical expertise. Under these circumstances, requiring exhaustion of the available administrative remedies would have been "nothing more than a formal step on the way to the courthouse." *Michigan Supervisors Union OPEIU Local 512 v Dep't of Civil Service*, 209 Mich App 573, 577; 531 NW2d 790 (1995). The trial court therefore did not err in failing to require plaintiffs to exhaust administrative remedies.

II

Next, defendant claims that the trial court improperly ruled that plaintiffs' proposed activities were exempt from the permit requirements of the WPA. With regard to this issue we agree with defendant.

MCL 324.30304; MSA 13A.30304 prohibits placing fill material in a wetland, dredging or removing soil from a wetland, draining surface water from a wetland, and constructing, operating, or maintaining any use in a wetland without a permit; however, MCL 324.30305; MSA 13A.30305 exempts certain uses from the permit requirement. The exemption at issue here is MCL 324.30305(2)(e); MSA 13A.30305(2)(e) (referred to as the "farming exemption"):

> Farming, horticulture, silviculture, lumbering, and ranching activities, including plowing, irrigation, irrigation ditching, seeding, cultivating, minor drainage, harvesting for the

production of food, fiber, and forest products, or upland soil and water conservation practices. Wetland altered under this subsection shall not be used for a purpose other than a purpose described in this subsection without a permit from the department.

The trial court opined that this farming exemption "is not limited in scope to existing farming operations nor limited by the size of the project but includes all activities necessary to commence and to continue farming in a commercially viable manner and to bring land into agricultural production." We disagree.

The fundamental purpose of statutory construction is to assist the court in discovering and giving effect to the intent of the Legislature. *Ansell v Dep't of Commerce (On Remand)*, 222 Mich App 347, 355; 564 NW2d 519 (1997). Statutory exceptions operate to restrict the general applicability of legislative language and are strictly construed. See *People v Brooks*, 184 Mich App 793, 797; 459 NW2d 313 (1990), citing *Grand Rapids Motor Coach Co v Public Service Comm*, 323 Mich 624; 36 NW2d 299 (1949).

According to Senate Bill Analysis, SB 3, January 17, 1980, and House Legislative Analysis, HB 4049, February 6, 1979, the WPA was intended to enable the state to assume authority to administer the federal Clean Water Act to Michigan's wetlands.[2] In order for

---

[2] We acknowledge that while a Senate bill analysis is not an official statement of legislative intent, it is a helpful tool in statutory interpretation. See *People v Link*, 225 Mich App 211, 217; 570 NW2d 297 (1997). The fact that Michigan became the first state to receive authority to enforce and administer the federal Clean Water Act lends support to the assertion in the Senate bill analysis. See 2 Haynes & Smary, Michigan Environmental Law Deskbook, Land Use Controls and State Lands, § 12.3 (1992 & Supp 1997).

Michigan to assume administration of the Clean Water Act, Michigan's analogous statute, the WPA, must be enforced in accordance with, and be just as or more stringent than, its federal counterpart. See 40 CFR 233.1(d). The analogous, similarly worded federal farming exemption statute, 33 USC 1344(f),[3] applies only to ongoing, established farming operations; activities that convert an area into farmland or bring an area into farming use are not exempted. See 40 CFR 232.3(c)(1); *Avoyelles Sportsmen's League v Alexander*, 473 F Supp 525 (WD La, 1979). Therefore, because the intent behind the WPA was to confer authority over the Clean Water Act, and because in order to assume such authority the WPA must be consistent with, and at least as stringent as, its federal counterpart, the WPA farming exemption must apply only to established uses and not to activities necessary to create new farmland.

The conclusion that the farming exemption was intended to apply to land in established use for agriculture, and was not intended to refer to new farming activities, is also supported by the language of the statutory exemption itself. The farming exemption lists "minor drainage" as an example of a permissible farming activity. According to the definition section of the WPA, MCL 324.30301(b); MSA 13A.30301(b), "minor drainage" refers to activities on "land in established use for agriculture." Further, it appears that the

---

[3] 33 USC 1344(f)(1)(A) provides that discharge of dredged or fill material from "normal farming, silviculture, and ranching activities such as plowing, seeding, cultivating, minor drainage, harvesting for the production of food, fiber, and forest products, or upland soil and water conservation practices" is not prohibited by the act.

other examples of permissible farming activities listed
in the farming exemption are "activities that would
only occur on a continuing basis as part of an ongo-
ing farming or forestry operation." See *Alexander,
supra* at 535 (interpreting the analogous federal stat-
ute in the Clean Water Act, 33 USC 1344[f]).

Also, Michigan courts recognize the principle of
statutory construction that express mention in a stat-
ute of one thing implies the exclusion of other similar
things. *Jennings v Southwood,* 446 Mich 125, 142; 521
NW2d 230 (1994). The exemption statute, MCL
324.30305; MSA 13A.30305, in the WPA specifically
exempts some farm-related construction. Subsection
2(g) allows construction of farm ponds, and subsec-
tion 2(i) allows construction of farm roads. No other
farm-related construction is specifically allowed. As a
result, we are of the opinion that it would be
improper to infer that other farm-related construction
activities are implied or that the word "farming"
implicitly includes construction activities not explic-
itly enumerated in the exemption statute. In conclu-
sion, the legislative intent behind the WPA, as well as
the language of the exemption statute, require us to
interpret the farming exemption as applying only to
currently existing farmland.[4] Because plaintiffs' land

---

[4] In addition, on the basis of the agreement between the state and the
federal government, defendant has been interpreting the WPA in accor-
dance with the Clean Water Act. While an agency's interpretations of stat-
utes it administers are not binding on courts, longstanding interpretations
are entitled to great weight unless clearly wrong. See *In re Storm,* 204
Mich App 323, 327; 514 NW2d 538 (1994). Therefore, we give some defer-
ence to defendant's interpretation.

was not already in agricultural use, the exemption does not apply.[5]

## III

Next, defendant claims that the issue whether the state of Michigan's interest in the land is nominal and unenforceable was barred by res judicata because there was a stipulation in a prior proceeding that the state had an interest in the land superior to plaintiffs. We agree.

Before the instant action, plaintiff Huggett sued the state and a mortgagee seeking to foreclose on the interest of the mortgagee and also asking that the court "enter its order determining the rights of any of [sic] defendants Robert Bolline and State of Michigan and the United States Treasury, if any." Subsequently, the parties stipulated that the state had an interest superior to any other party at bar. This stipulation was recited in the trial court's final order, where the trial court ruled, in part, that plaintiffs' rights were subject to the state's interests.

Res judicata bars relitigation of claims actually litigated and those claims arising out of the same transaction that could have been litigated. *Eaton Co Bd of Co Rd Comm'rs v Schultz*, 205 Mich App 371, 376; 521 NW2d 847 (1994). The test for determining whether two claims are identical for res judicata purposes is whether the same facts or evidence are essential to

---

[5] Whether plaintiffs' proposed farm should be allowed is a separate issue and is not before this Court. We were simply asked to determine whether plaintiffs must seek a permit, and we answered that question in the affirmative. We offer no opinion with respect to the propriety of plaintiffs' proposed use of a wetland.

the maintenance of the two claims. *Jones v State Farm Ins Co*, 202 Mich App 393, 401; 509 NW2d 829 (1993).

Plaintiff Huggett's complaint in the prior proceedings sought the court's determination of the state's rights in the land. Plaintiff Huggett then stipulated the superiority of the state's interest. In the case at bar, plaintiffs sought to litigate the validity of the condition placed in the deed; however, plaintiff Huggett did not limit the prior proceeding to foreclosure. He specifically asked for a determination of the state's rights in the land. Because the rights of the state are essentially dependent on the validity of the condition in the deed, the same facts or evidence were essential to the maintenance of both claims, and the validity of the condition could have been litigated in the prior proceeding. It is inequitable to allow plaintiff Huggett to clearly set out a quiet-title claim against the state in a prior proceeding, concede the issue, and then subsequently argue that he did not have the ability to challenge the state's interest in the first place. Consequently, we find that in the instant action plaintiffs should have been precluded from challenging the state's interest in the property.

Moreover, even if the doctrine of res judicata did not apply, the condition placed on the land at issue is not nominal, and the state's interest in the land is enforceable. MCL 554.46; MSA 26.46 provides:

> When any conditions annexed to a grant or conveyance of lands are merely nominal and evince no intention of actual and substantial benefit to the party to whom or in whose favor they are to be performed, they may be wholly disregarded, and a failure to perform the same shall in no

case operate as a forfeiture of the lands conveyed subject thereto.

In *Barrie v Smith*, 47 Mich 130, 135; 10 NW 168 (1881), our Supreme Court stated:

> The fair construction of this statute is that conditions in a conveyance which evince no intention of actual or substantial benefit to the grantor are merely nominal. Where the observance of the condition is an existing substantial benefit, or its breach works an actual substantial injury to the grantor it cannot be considered as nominal . . . .

*Barrie* also states that adjoining landowners may place conditions on adjoining lands they transfer to protect their interest in preventing "noxious business from being carried on thereon, or in having it improved in a certain manner." *Id.* at 134. We interpret *Barrie* as holding that adjoining landowners have a special interest in enforcing use conditions placed upon adjoining land they transfer, and that these conditions are not nominal. Because the land at issue adjoins state land, and the state put the condition on land adjoining land it owns, the state has a special interest in enforcing the condition, and the condition is not nominal.

IV

On cross appeal, plaintiffs claim that the state's interest in the land is unenforceable because it violates the rule against perpetuities. As previously discussed, plaintiffs are precluded from challenging the validity of the state's interest in the land at issue. Moreover, even if plaintiffs were not precluded from raising this issue, the claim must fail. Generally speaking, rights of entry are not subject to the com-

mon-law rule against perpetuities, see 61 Am Jur 2d, Perpetuities and Restraints on Alienation, § 47, pp 58-59; 1 Restatement Property (Donative Transfers), 2d, § 1.4 comment c, p 49, and because plaintiffs' terminable interest was initially created in a conveyance from the state, Michigan's statutory limitation placed on rights of entry is inapplicable, MCL 554.61; MSA 26.49(11).

Affirmed in part and reversed in part.

Saad, J., concurred.

White, P.J. (*concurring in part and dissenting in part*). While it is clearly consistent with the public policy of this state, as expressed in subsection 30302(1)(c) of the wetlands protection act, MCL 324.30302(1)(c); MSA 13A.30302(1)(c), to permit and facilitate operation of a commercial cranberry-growing facility in a wetland area, I agree that the farming exception to the permit requirement, MCL 324.30305(2)(e); MSA 13A.30305(2)(e), when construed in the context of the entire act, does not evince a legislative intent to except from the permit requirement "all activities necessary to commence . . . farming in a commercially viable manner and to bring land into agricultural production," without regard to the scope or nature of those activities. I agree that plaintiffs' proposed alterations in preparation for farming were subject to the permit requirement.

I do not agree that plaintiffs' challenge to the state's reversionary interest in the property is barred by res judicata. The prior proceeding was a foreclosure action. The state was included as a party because of its reversionary interest in the property. Huggett stipulated the superiority of the state's interest. In so stipulating, Huggett acknowledged that the state's interest would survive the foreclosure proceeding and that his

interest in the property was subject to the state's reversionary rights under the deed from the state to Michigan National Bank. Acknowledging the superiority of the reversionary rights in the deed (whatever their scope and interpretation) over Huggett's interest as the mortgagee, and after foreclosure, fee owner, is not tantamount to acknowledging that the reversionary rights themselves are valid and not subject to challenge on the basis of mistake[1] or because based on nominal conditions. In sum, the stipulation in the prior action was a concession that the state's reversionary interest would survive the foreclosure action as superior to Huggett's rights; it was not a concession that the interest is valid and enforceable.

I agree, however, that the state's reversionary interest is not based on conditions that are "merely nominal" "evinc[ing] no intention of actual and substantial benefit to" the state, and that the interest is not unenforceable as violative of the rule against perpetuities.

---

[1] This was one of the claims asserted below.