**In re Donn K. SCOTT, Debtor.**

**Bankruptcy No. 95–31368.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

March 17, 1999.

Paul H. Steinberg, Attorney at Law, Southfield, MI, for debtor.

George E. Jacobs, Attorney at Law, Bay City, MI, for Michigan Capital Funding.

## OPINION REGARDING MOTION FOR FINDING OF CONTEMPT

ARTHUR J. SPECTOR, Chief Judge.

### Introduction

Donn K. Scott filed a petition for chapter 7 bankruptcy relief on September 22, 1995. He was granted a discharge on February 28, 1996. Thereafter, Scott was sued in Genesee County Circuit Court by Michigan Capital Funding, Inc. That action culminated in the entry of a default judgment against Scott for $24,054.88.

Now pending is Scott's motion seeking a declaration that Michigan Capital is "in contempt of the permanent injunction imposed under 11 U.S.C. § 524(a)(1) and (2)." Motion for Contempt at p. 3. A hearing on this motion was held October 7, 1998. We reserved decision in the matter, and asked that the parties file supplemental briefs.

### Discussion

The § 524 discharge injunction, of course, presupposes that the obligation in question was discharged. Because the premise of Scott's motion is that such an injunction is in force, we cannot grant the relief which he requests unless we first determine that the debt to Michigan Capital is dischargeable.

Dischargeability was also of pivotal importance in the lawsuit filed by Michigan Capital. See generally Local 155 UAW Credit Union v. Zalewski, 25 Mich.App. 230, 181 N.W.2d 288 (1970) (per curiam) (where the defendant in an action on a promissory note successfully invoked the defense of discharge in bankruptcy); cf. F.R.Civ.P. 8(c) (listing "discharge in bank-ruptcy" as an "[a]fffirmative [d]efense[ ]"). Thus the issue presented here is whether Scott is now precluded from invoking § 524.

The purpose of the doctrine of "claim preclusion is to avoid multiple suits on identical claims." Rucker v. Shalala, 894 F.Supp. 1209, 1215 (S.D.Ind.1995), aff'd, 92 F.3d 492 (7th Cir.1996). The applicability of that doctrine is in this case determined by Michigan law. See 28 U.S.C. § 1738 ("[J]udicial proceedings of any [state] court . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . . from which they are taken."); Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (Section 1738 "directs a federal court to refer to the preclusion law of the State in which judgment was rendered."). But see id. at 386, 105 S.Ct. 1327 ("[I]f state law indicates that a particular claim or issue would be barred, [it] is . . . necessary to determine if an exception to § 1738 should apply. . . . [T]he more general question is whether the concerns underlying a particular grant of exclusive jurisdiction justify a finding of an implied partial repeal of § 1738. Resolution of this question will depend on the particular federal statute as well as the nature of the claim or issue involved in the subsequent federal action. . . . [T]he primary consideration must be the intent of Congress."). See In re Calvert, 105 F.3d 315, 317 (6th Cir.1997).

In Michigan, claim preclusion requires that the following be established: "(1) the former suit was decided on the merits, (2) the issues in the second action were or could have been resolved in the former action, and (3) both actions involved the same parties or their privies." Phinisee v. Rogers, 229 Mich.App. 547, 551, 582 N.W.2d 852 (1998). See also Huggett v. Dep't of Natural Resources, 232 Mich.App. 188, 197, 590 N.W.2d 747 (1998) ("Res judicata bars relitigation of claims

actually litigated and those claims arising out of the same transaction and that could have been litigated"); *Schwartz v. City of Flint*, 187 Mich.App. 191, 194, 466 N.W.2d 357 (1991) (per curiam) ("Res judicata applies to default judgments...."). [1] The first and third of these three elements would certainly seem to be satisfied, and Scott does not assert otherwise.

Regarding the second element, Scott stresses the fact that he "did not raise the issue of discharge in the State Court Collection case." Scott's Post–Hearing Brief at p. 7. But as *Phinisee* and *Huggett* make clear, the salient question is whether the state court *could have* ruled on the discharge defense had Scott chosen to raise it.

With respect to this issue, one sometimes comes across statements suggesting that state courts lack jurisdiction to make dischargeability determinations. *See, e.g., In re Caton*, 157 F.3d 1026, 1028 (5th Cir.1998) ("[T]he bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable."). Such statements, however, are overly broad.

█ The various grounds for excepting a debt from discharge are enumerated in subsection (a) of § 523. Non-dischargeability complaints under sub-paragraphs (2), (4), (6) or (15) are time-barred if not filed within 60 days after "the first date set for the meeting of creditors held pursuant to § 341(a)." F.R.Bankr.P. 4007(c). *See* 11 U.S.C. § 523(c)(1). Thus it is generally true that disputes involving these provisions must be resolved in the bankruptcy forum. [2]

When Michigan Capital filed its state-court complaint, however, the limitation period imposed by Rule 4007(c) had long passed. (The § 523(c) deadline was February 26, 1996. *See* Notice of Commencement of Case (Docket # 5). The state action was filed some time after April 4th of the same year. *See* Scott's Motion at ¶¶ 5 and 6; Michigan Capital's Objection at p. 3, ¶¶ 11 and 12.) This meant that Michigan Capital's only option in challenging the validity of Scott's discharge defense would have been to contend that the debt was excepted from discharge by one of the statutory exceptions which is not subject to the time bar. *See* F.R.Bankr.P. 4007(b) ("A complaint other than under § 523(c) may be filed at any time.").

█ In other words, the only provisions of § 523(a) which remain viable after the bar date are those paragraphs other than (2), (4), (6), or (15). And state courts have jurisdiction to decide disputes based on those provisions. *See, e.g., In re McKendry*, 40 F.3d 331, 335 n. 3 and accompanying text (10th Cir.1994); *In re Siragusa*, 27 F.3d 406, 408 (9th Cir.1994); *In re Peacock*, 139 B.R. 421, 422 n. 1 (Bankr. E.D.Mich.1992); *supra* n. 2. We therefore conclude that the parties could have litigated the dischargeability issue in Genesee County Circuit Court.

█ For claim-preclusion purposes, there is a sufficient nexus between the current and prior litigation if "the same facts or evidence are essential to the maintenance of the two claims." *Huggett*, 232 Mich.App. at 197, 590 N.W.2d 747. *Cf. Energy Reserves, Inc. v. Consumers Pow-*

---

1. In these decisions, the court used the expression "res judicata" to mean claim preclusion. *See, e.g., People v. Gates*, 434 Mich. 146, 154 n. 7, 452 N.W.2d 627 (1990) ("This Court generally uses the term 'res judicata' to refer to what is often called 'claims [sic] preclusion' ...."); *see generally Rucker*, 894 F.Supp. at 1215 (recommending for the sake of clarity that the expression "res judicata" be used solely to refer "collectively" to the distinct "concepts" of claim preclusion and issue preclusion).

2. An exception to this rule relates to debts not scheduled in accordance with § 523(a)(3)(B). *See* 11 U.S.C. § 523(c)(1). State courts may rule on whether a debt is excepted from discharge by § 523(a)(3). *See, e.g., In re Bowen*, 102 B.R. 752, 754 (9th Cir. BAP 1989); *In re Gray*, 60 B.R. 428, 430 (D.R.I.1986); *In re Honeycutt*, 228 B.R. 428, 430 (Bankr.E.D.Ark. 1998); *In re David*, 106 B.R. 126, 130 (Bankr. E.D.Mich.1989).

er Co., 221 Mich.App. 210, 215, 561 N.W.2d 854 (1997) (per curiam) ("A subsequent suit between the same parties when the evidence or essential facts remain the same is barred by the doctrine of res judicata."). When previously confronted with this question, we ruled that the two law suits were sufficiently related to warrant claim preclusion. *See In re Moon,* 116 B.R. 75, 78 (Bankr.E.D.Mich.1990) ("The cause of action in the state court was the determination of the Debtor's debt to the Bank. That is in essence what is at issue here.").

At the hearing in this matter, we asked the parties to brief the *Moon* case. For his part, Scott suggested that the "issue [in *Moon* was] ... the Debtor's failure to properly schedule a pre-petition creditor." Scott's Post–Hearing Brief at p. 7. In this matter, on the other hand, Michigan Capital's "assignor[ ] had presumptive actual notice of the filing of the bankruptcy, as it was properly scheduled by the Debtor." *Id.*

Scott's attempt to distinguish *Moon* is unpersuasive. It is true that the debtor in that case had filed a motion seeking to add certain creditors omitted from his original chapter 7 schedules. *Moon,* 116 B.R. at 76. We noted, however, that "[w]hat the Debtor actually seeks is a determination from this Court that the debts he previously omitted ... were discharged." *Id.* It is in this critical respect that this matter resembles *Moon:* The substantive relief which Scott seeks is (or, at least, necessarily includes) a determination that the bankruptcy discharge encompasses the obligation to Michigan Capital.

As suggested earlier, the bottom-line issue in this matter is essentially the same as that which the state court confronted: Does Michigan Capital have an enforceable right of payment? Thus, while the parties have exchanged hats (the former defendant now being the plaintiff, and vice versa), it is clear that the dischargeability *vel non* of Michigan Capital's debt was, to requote *Huggett,* "essential to the maintenance of the two claims."

■ Accordingly, we conclude that Scott would be barred under Michigan law from asserting that Michigan Capital's debt was discharged. *See Van Pembrook v. Zero Mfg. Co.,* 146 Mich.App. 87, 100–01, 380 N.W.2d 60 (1985) ("Michigan applies the doctrine of res judicata broadly so as to include not only points upon which the court was actually required by the parties to adjudicate but also to include 'every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at that time.' " (citations omitted)). Scott does not argue, nor does it appear, that there are any special federal concerns here which would warrant a different result in this Court. *See Marrese,* 470 U.S. at 386, 105 S.Ct. 1327 (quoted *supra* p. 886); *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."); *Calvert,* 105 F.3d at 322 ("In the absence of any indication in the Bankruptcy Code or legislative history suggesting that Congress intended an exception to § 1738 apply to true default judgments ..., we conclude that collateral estoppel applies to true default judgments in bankruptcy dischargeability proceedings in those state which would give such judgments that effect."). We therefore determine that Scott cannot invoke § 524. Because his motion for contempt is predicated on that statute, it will be denied. *See Moon,* 116 B.R. at 79; *cf. In re Mannor,* 175 B.R. 639, 640 (Bankr. E.D.Mich.1994) ("[T]he Debtor claimed that all or some part of the [state-court judgment] debt is owed not by him, but by a corporation of which he was a principal. That is an issue which should have been raised in the state-court action. The Debtor failed to do so then, and he is

precluded by the doctrine of *res judicata* from doing so now.").

An appropriate order shall enter.[3]

---

**3.** This disposition obviates the need to address the other issue which the parties were asked to brief, that being whether Scott is equitably estopped from asserting the discharge injunction. *See generally Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 911 (6th Cir.1993) ("[W]here the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, ... the protections of section 362(a) [are] ... unavailable to the debtor.").