**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

FILED JULY 17, 2001

WALLACE A HUGGETT and HUGGETT
SOD FARM, d/b/a MICHIGAN
CRANBERRY COMPANY,

    Plaintiffs-Appellants,

v                                               No. 113463

DEPARTMENT OF NATURAL RESOURCES,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

CAVANAGH, J.

    This case requires us to decide whether plaintiffs' proposed activities to build and operate a commercial cranberry farm in a wetland is exempt from the statutory wetland permit requirements, MCL 324.30304, because it is a farming activity that is not subject to the permit requirements under the farming activities exemption provided by MCL 324.30305(2)(e). We conclude that the farming activities exemption is not so broad that it encompasses

plaintiffs' proposal.  Also, the proposed cranberry farm does not fall within the production and harvesting draining exemption to the wetland permit requirements, MCL 324.30305(2)(j), or the existing farming exemption to the requirements, MCL 324.30305(3), that we ordered the parties to address.  Therefore, plaintiffs must obtain a wetland permit to proceed with the proposed cranberry farm.  Accordingly, we affirm the judgment of the Court of Appeals.

I

The facts of this case surround plaintiffs Wallace Huggett and Huggett Sod Farm's proposal to build a commercial cranberry farm on land in Cheboygan County.  Plaintiff Huggett acquired the 325-acre parcel, all but forty-seven acres of which is wetland, after a mortgage on the property was assigned to him and he foreclosed the mortgage.  Before plaintiff acquired the parcel, which abuts Lake 16, the parcel had been the site of a peat farm.  After acquiring title, plaintiffs proposed to build a 200-acre commercial cranberry farm on the land.  To create beds in which cranberries could grow, the proposed farm entailed placing fill material in wetland areas, excavating and removing soil from wetland areas, building dikes and culverts; digging irrigation ditches; and constructing a reservoir and pumping station, roads, and an airstrip.

In 1990, plaintiff Huggett contacted defendant Department of Natural Resources to determine whether he needed a wetland permit to proceed with the proposed cranberry farm.  Defendant

2

advised him that he did, and plaintiffs applied for a permit later that year. However, defendant denied the application. Plaintiffs then requested a contested case hearing under the Administrative Procedures Act, MCL 24.201 *et seq.*, see MCL 324.30319(2) (allowing requests for hearings under the Administrative Procedures Act), and although the case was docketed for a hearing, no such hearing occurred after over a year. Plaintiffs thus filed this action seeking a declaration that their proposed cranberry farm is not subject to the wetland permit requirements because it is a farming activity exempted from the requirements by MCL 324.30305(2)(e). All administrative proceedings have been abeyed for this litigation.

After several hearings, and after addressing matters no longer pertinent to this case, the trial court granted plaintiffs the declaration they sought. The trial court's final judgment and order held that plaintiffs' proposed cranberry farm is a farming activity exempt from the wetland permit requirements. That order stated that the farming activities exemption "includes all activities necessary to commence and to continue farming in a commercially viable manner and to bring land into agricultural production."

Defendant appealed. The Court of Appeals reversed on the exemption issue, reasoning that "the farming exemption was intended to apply to land in established use for agriculture, and was not intended to refer to new farming activities . . . ." 232 Mich App 188, 195; 590 NW2d 747

(1998).  Because plaintiffs wanted to establish a new farm rather than continue an existing farm, the Court of Appeals concluded that plaintiffs must obtain a wetland permit. Plaintiffs appealed that conclusion, and this Court granted leave, limited to whether the Court of Appeals correctly interpreted the farming activities exemption.  Also, we ordered the parties to address the applicability of MCL 324.30305(2)(j) and (3), which concern draining wetland that is contiguous to a lake or stream and farming that has been in existence since 1980, respectively.  463 Mich 910 (2000).  We now affirm.

II

Part 303 of the Natural Resources and Environmental Protection Act governs activities in wetlands.[1]  See MCL 324.30301 *et seq.*  Most importantly, MCL 324.30304 prohibits certain acts in wetlands:

> Except as otherwise provided by this part or by a permit obtained from the department [of Natural Resources] under [other sections of NREPA part 303], a person shall not do any of the following:
>
> (a) Deposit or permit the placing of fill material in a wetland.
>
> (b) Dredge, remove, or permit the removal of soil or minerals from a wetland.

---

[1] Formerly, the Wetland Protection Act, MCL 281.701 *et seq.,* governed activities in wetlands.  The act was repealed by 1995 PA 59, but its provisions were recodified as part 303 of the Natural Resources and Environmental Protection Act. See MCL 324.30301 *et seq.* (1994 PA 451).  Because the recodified provisions are the same as those provided by the original act, which was in effect when this case was filed, we will simply refer to the current provisions.

4

(c) Construct, operate, or maintain any use or development in a wetland.

(d) Drain surface water from a wetland.

However, part 303 also provides that certain activities are not subject to § 30304's prohibitions.  Section 30305 sets forth permissible uses of a wetland, and states in pertinent part:

(2) The following uses are allowed in a wetland without a permit subject to other laws of this state and the owner's regulation:

* * *

(e) Farming, horticulture, silviculture, lumbering, and ranching activities, including plowing, irrigation, irrigation ditching, seeding, cultivating, minor drainage, harvesting for the production of food, fiber, and forest products, or upland soil and water conservation practices. Wetland altered under this subdivision shall not be used for a purpose other than a purpose described in this subsection without a permit from the department.

(f) Maintenance or operation of serviceable structures in existence on October 1, 1980 or constructed pursuant to this part of former Act No. 203 of the Public Acts of 1979.

(g) Construction or maintenance of farm or stock ponds.

(h) Maintenance, operation, or improvement which includes straightening, widening, or deepening of the following which is necessary for the production or harvesting of agricultural products:

(*i*) An existing private agricultural drain.

(*ii*) That portion of a drain legally established . . . which has been constructed or improved for drainage purposes.

(*iii*) A drain constructed pursuant to other provisions of this part . . .

5

(i) Construction or maintenance of farm roads, . . . if the roads are constructed and maintained in a manner to assure that any adverse affect on the wetland will be otherwise minimized.

(j) Drainage necessary for the production and harvesting of agricultural products if the wetland is owned by a person who is engaged in commercial farming and the land is to be used for the production and harvesting of agricultural products. Except as otherwise provided in this part, wetland improved under this subdivision after October 1, 1980 shall not be used for nonfarming purposes without a permit from the [DNR]. This subdivision shall not apply to a wetland which is contiguous to a lake or stream, or to a tributary of a lake or stream, or to a wetland that the department has determined by clear and convincing evidence to be a wetland that is necessary to be preserved for the public interest, in which case a permit is required.

* * *

(n) Operation or maintenance, including reconstruction of recently damaged parts, of serviceable dikes and levees in existence on October 1, 1980 or constructed pursuant to this part or former Act No. 203 of the Public Acts of 1979.

* * *

(3) An activity in a wetland that was effectively drained for farming before October 1, 1980 and that on and after October 1, 1980 has continued to be effectively drained as part of an ongoing farming operation is not subject to regulation under this part.

To determine whether the activities necessary to establish and operate plaintiffs' proposed cranberry farm are permissible uses exempted from the wetland permit requirements, we must construe both the prohibitions and exemptions in part 303 to make both viable. When construing statutes, our primary task is to discern and give effect to the Legislature's intent. We begin by examining the statutory language, which provides the

6

most reliable evidence of that intent. If the statutory language is clear and unambiguous, then we conclude that the Legislature intended the meaning it clearly and unambiguously expressed, and the statute is enforced as written. No further judicial construction is necessary or permitted. See *In re MCI,* 460 Mich 396, 411; 596 NW2d 164 (1999). Statutory construction presents questions of law, which are reviewed de novo. *Id.* at 413.

### A. THE FARMING ACTIVITIES EXEMPTION

Plaintiffs contend that the activities necessary to establish and operate their proposed cranberry farm are not subject to the wetland permit requirements under § 30305(2)(e)'s farming activities exemption. That section exempts farming activities, and provides a list of several types of farming activities that begins with the term "including." Plaintiffs argue that by beginning the list with "including," the Legislature intended that the listed activities would serve only as examples of the types of exempted farming activities. The farming activities exemption, plaintiffs reason, "includes all of the activities necessary for farming." Plaintiffs thus conclude that they can engage in all the activities necessary to establish and operate their cranberry farm without a wetland permit. We disagree.

When a statute uses a general term followed by specific examples included within the general term, as the farming activities exemption does, the canon of statutory construction

7

ejusdem generis applies. See *Belanger v Warren Bd of Ed,* 432 Mich 575, 583; 443 NW2d 372 (1989). This canon gives effect to both the general and specific terms by "treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words." *Id.,* quoting 2A Sands, Sutherland Statutory Construction (4th ed), § 47.17, p 166. In light of the specific terms, the general term is restricted to include only things of the same kind, class, character, or nature as those specifically enumerated. See *Sands Appliance Servs, Inc v Wilson,* 463 Mich 231, 242; 615 NW2d 241 (2000).

Under § 30305(2)(e), farming activities are generally exempt from the wetland permit requirements, but, as mentioned, that subsection specifically exempts "plowing, irrigation, irrigation ditching, seeding, cultivating, minor drainage, harvesting for the production of food, fiber, and forest products, or upland soil and water conservation practices." These specific examples of farming activities relate to the operation, improvement, expansion, and maintenance of a farm, or to the actual practice of farming.[2] Under the canon of ejusdem generis, then, the general exemption for farming activities can include activities not specifically listed in § 30305(2)(e), but the activities must

---

[2] We note that harvesting for the production of forest products seems to relate to the general exemption for lumbering activities.

8

be of the kind, class, character, or nature of operating a farm or practicing farming. The activities plaintiffs seek to exempt, however, are not in the kind, class, character, or nature of operating a farm.

To reiterate, absent a permit, part 303 prohibits the following activities in wetlands: (a) depositing or permitting the placing of fill material in a wetland; (b) dredging, removing, or permitting the removal of soil or minerals from a wetland; (c) constructing, operating, or maintaining any use or development in a wetland; or (d) draining surface water from a wetland. See MCL 324.30304. Nevertheless, a permit is not required to engage in farming, horticulture, silviculture, lumbering, or ranching activities, including plowing, irrigation, irrigation ditching, seeding, cultivating, minor drainage, harvesting for the production of food, fiber, and forest products, or upland soil and water conservation practices.

As is apparent, some of the activities allowed under § 30305 overlap with the activities prohibited under § 30304. For example, § 30304 prohibits draining surface water from a wetland, while § 30305 allows minor drainage. To make both sections viable, we must read the allowance for minor drainage only to allow drainage that fits within the definition of "minor drainage," or, in other words, only to allow drainage

9

that is inconsequential. See MCL 324.30301(b).[3] However, other activities allowed under § 30305, for example, seeding and harvesting, present no such overlap with the prohibitions. When there is no overlap, a person, or his successor, seeking to engage in farming, horticulture, silviculture, lumbering, or ranching activities can do so without the restrictions imposed by the wetland permit requirements.

With this balanced reading of part 303, some cases may leave room for debate whether drainage activities become more than "minor drainage." However, no such debate is possible in this case. Plaintiffs' proposed activities unquestionably amount to more than "minor drainage" and also entail filling and dredging in a wetland, which are prohibited activities. These activities, then, do not fit within the farming activities exemption to the wetland permit requirements.

Our conclusion that the farming activities exemption does not extend to plaintiffs' proposed activities is further supported by other provisions of the wetland permit exemptions. Subdivision 30305(2)(g) exempts "[c]onstruction or maintenance of farm or stock ponds," and § 30305(2)(i) exempts "[c]onstruction or maintenance of farm roads" in certain instances. Were plaintiffs correct that the general farming activities exemption encompasses all activities

---

[3] "Minor drainage" is statutorily defined to mean "ditching and tiling for the removal of excess soil moisture incidental to the planting, cultivating, protecting, or harvesting of crops or improving the productivity of land in established use for agriculture, horticulture, silviculture, or lumbering."

necessary for farming, including constructing a farm, then these subdivisions would be surplusage because they would be subsumed by the general farming activities exemption. We must avoid an interpretation that renders any part of a statute surplusage, see *MCI, supra* at 414, so the general farming activities exemption cannot exempt construction from the wetland permit requirements. Rather, the farming activities exemption covers only activities in the same kind, class, character, or nature as those activities enumerated in § 30305(2)(e), and the aspects of plaintiffs' proposed activities that are construction, for example constructing a pumping station and an airstrip, are not such activities.

Though the Court of Appeals came to the correct conclusion in this case, we disagree with certain of its reasoning. First, the farming activities exemption is not limited to "land in established use for agriculture," as that Court concluded. 232 Mich App at 195. Though the Legislature did condition certain use exemptions on the uses having been in existence, see § 30305(2)(f) (structures in existence on October 1, 1980); § 30305(2)(h) (existing, established, and constructed drains); § 30305(2)(n) (dikes and levees in existence on October 1, 1980); § 30305(3) (wetland drained before and continuously since October 1, 1980), it did not so condition the farming activities exemption. Thus, when considering whether an alleged farming activity is exempted from the wetland permit requirements, the inquiry is not whether the land in question was in established use for farming activities, but whether the activity is of the same

11

kind, class, character, or nature as the specific activities that relate to operating a farm listed in § 30305(2)(e). If so, even if the activity was not previously established, it will fall within the exemption for farming activities and the wetland permit requirements will not apply. Second, the Court of Appeals relied on federal law to reach its conclusion. See 232 Mich App 194-195. Because we can discern the Legislature's intent on this question from the wetland provisions themselves, we need not concern ourselves with federal law in this case. For these reasons, we disagree with these aspects of the Court of Appeals opinion.

In sum, the activities necessary to establish and operate plaintiffs' proposed cranberry farm do not fit within § 30305(2)(e)'s farming activities exemption. Once constructed, certain aspects of the proposed farm may involve exempted activities, but many of the activities necessary to establish and operate the proposed farm do not. We, therefore, move on to consider whether the proposed cranberry farm is within the other exemptions to the wetland permit requirements that we directed the parties to address.

B. THE PRODUCTION AND HARVESTING DRAINING EXEMPTION

When we granted leave, we directed the parties to address the applicability of § 30305(2)(j). This subdivision exempts "[d]rainage necessary for the production and harvesting of agricultural products if the wetland is owned by a person who is engaged in commercial farming and the land is to be used for the production and harvesting of agricultural products," but not if the wetland is "contiguous to a lake or

12

stream, . . . or to a wetland that the department has determined by clear and convincing evidence to be a wetland that is necessary to be preserved for the public interest, in which case a permit is required." Though this might exempt certain aspects of plaintiffs' proposed cranberry farm if it were constructed, as plaintiffs concede, activities other than drainage, for example certain construction and filling that are not otherwise exempted from the wetland permit requirements, are necessary to have the farm constructed. Thus, § 30305(2)(j) does not exempt the proposed farm from the wetland permit requirements.[4] We, therefore, proceed to consider the last exemption we ordered the parties to address.

## C. THE EXISTING FARMING EXEMPTION

Our grant order also directed the parties to address the applicability of § 30305(3). This subsection exempts from the permit requirements activities in wetland that was drained for farming before October 1, 1980, and has continued to be drained as part of an ongoing farming operation. Although plaintiffs' land was a peat farm before plaintiffs purchased it, they have conceded that the cranberry farm was not an ongoing activity in a wetland drained for farming before October 1, 1980. Hence, this subsection also does not exempt

---

[4] We note that plaintiffs' land is adjacent to Lake 16. However, the trial court did not make a finding whether the land is "contiguous" to Lake 16 as that term is used in § 30305(2)(j), which is defined in administrative rules promulgated by the Department of Natural Resources. See 1999 AC, R 281.921; see also MCL 324.30319(1) (directing the DNR to promulgate rules to enforce part 303). Therefore, we do not consider whether plaintiffs' land could fall into the exception to the draining exemption.

the proposed farm from the wetland permit requirements.

### D. THE WETLAND PERMIT REQUIREMENTS APPLY

Absent an applicable exemption or a wetland permit, § 30304 generally prohibits placing fill material in, removing soil from, construction in, or draining surface water from a wetland. Plaintiffs' proposal to build a cranberry farm in a wetland entails such activities, yet does not fall within the statutory exemptions to the wetland permit requirements. For plaintiffs to proceed with their proposal, they will have to obtain a wetland permit from defendant. Although defendant has denied plaintiffs a permit, part 303 provides plaintiffs the right to request a hearing on the denial, which is ultimately subject to judicial review. See § 30319. As mentioned, plaintiffs have already begun these procedures, and because there is no statutory exemption, we leave plaintiffs to any remedies that they may be able to garner through these procedures.

### III

In conclusion, the farming activities exemption does not exempt all activities necessary to farm, but only those specifically listed in the exemption, or activities of the same kind, class, character, or nature as the listed activities. Because the activities necessary to establish and operate plaintiffs' proposed cranberry farm do not fit within that exemption, or the production and harvesting draining exemption, or the existing farming exemption, plaintiffs' proposal is subject to the wetland permit requirements. Defendant has already denied plaintiffs a permit, so

14

plaintiffs are left with the procedures for appealing from denials of permits.  The judgment of the Court of Appeals is affirmed.

CORRIGAN, C.J., and WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CAVANAGH, J.