# STATE OF MICHIGAN

# COURT OF APPEALS

GREGORY D. GRONINGER, CAROL J.
GRONINGER, KENNETH THOMPSON, and
THOMAS DUNN,

Plaintiffs-Appellants,

v

DEPARTMENT OF ENVIRONMENTAL
QUALITY,

Defendant-Appellee.

UNPUBLISHED
January 29, 2015

No. 318380
Midland Circuit Court
LC No. 12-009040-CZ

Before: SHAPIRO, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiffs sought declaratory relief to prevent defendant Department of Environment Quality (DEQ) from entering their property to inspect for wetlands. They now appeal by right the trial court order granting summary disposition to defendant under MCR 2.116(C)(5) (standing), (C)(8) (failure to state a claim), and (C)(10) (no issue of material fact). We affirm.

Plaintiffs Greg and Carol Groninger's chain of title to the property in issue stretches back to a federal patent granted in 1855. Plaintiffs Kenneth Thompson and Thomas Dunn, on the other hand, have only a verbal lease to use the property for hunting. When defendant was prevented from entering the subject property, apparently to inspect a driveway that was being built, it sought a warrant to conduct a wetlands inspection. In response, plaintiffs filed suit seeking declaratory relief that defendant did not have authority to enter their private land, arguing that defendant was operating outside its legislative authority.

Defendant sought and was granted summary disposition. The trial court ruled that summary disposition was appropriate under either MCR 2.116(C)(8) or (C)(10) because there was no legal basis to plaintiffs' claims and no factual development could cure that defect. The court also concluded that plaintiffs Dunn and Thompson did not have an actionable interest in the land and had not suffered a particularized injury different than that suffered by the general public. See MCR 2.116(C)(5).

-1-

## I. MCR 2.116(C)(5): PLAINTIFFS DUNN AND THOMPSON

We first address the trial court's ruling that plaintiffs Dunn and Thompson lacked standing in this action, a question of law subject to review de novo. *Duncan v State*, 300 Mich App 176, 191; 832 NW2d 761 (2013). When reviewing a ruling under MCR 2.116(C)(5), we must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties. *Szyszlo v Akowitz*, 296 Mich App 40, 46; 818 NW2d 424 (2012).

Whether a party has standing in a suit seeks to "assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citation omitted). In cases involving private rights, "the litigant should have some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy." *Id*. at 359 (internal quotation marks and citation omitted). Where a party seeks declaratory relief, "meeting the requirements of the court rule governing declaratory actions [is] sufficient to establish standing." *Id*. at 357. Thus, "whenever a litigant meets the requirements of MCR 2.605, it is sufficient to establish standing to seek a declaratory judgment." *Id*. at 372. MCR 2.605(A)(1) provides, "In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted."

A case of actual controversy is a "condition precedent to invocation of declaratory relief." *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 55; 620 NW2d 546 (2000). It is essential that a plaintiff "pleads facts entitling him to the judgment he seeks and proves each fact alleged," and those facts "indicate an adverse interest necessitating a sharpening of the issues raised." *Shavers v Attorney General*, 402 Mich 554, 589; 267 NW2d 72 (1978). When the "injury sought to be prevented is merely hypothetical, a case of actual controversy does not exist." *Citizens for Common Sense*, 243 Mich App at 55.

In this case, defendant seeks only to enter the subject property to inspect for wetlands. Although Dunn and Thompson allege that they have an oral lease to hunt on the property, they have made no showing that their hunting interest would be affected by defendant entering the land to determine its wetland status. Further, Dunn and Thompson have not pleaded facts establishing that the underlying circumstance that brought the subject matter to defendant's attention (construction of a driveway) in any way affects their hunting interest. Their injury, as presented to the trial court and on appeal, is merely hypothetical and they have not established an actual controversy. Accordingly, the trial court properly concluded that Dunn and Thompson lacked standing in this action for declaratory judgment under MCR 2.605 and, therefore, did not err by granting summary disposition in favor of defendant under MCR 2.116(C)(5) with respect to plaintiffs Dunn and Thompson.

## B. MCR 2.116(C)(8) AND (C)(10): PLAINTIFFS GRONINGER

A trail court's grant of summary disposition under MCR 2.116(C)(8) and/or (C)(10) is reviewed de novo. *Wilson v King*, 298 Mich App 378, 381; 827 NW2d 203 (2012) (MCR 2.116(C)(8)); *Ernsting v Ave Maria College*, 274 Mich App 506, 509; 736 NW2d 574 (2007) (MCR 2.116(C)(10)). A motion under MCR 2.116(C)(8) "tests the legal sufficiency of the claim

on the basis of the pleadings alone." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). Therefore, "the court must accept as true all factual allegations contained in the complaint" and the "motion must be granted if no factual development could justify the plaintiff's claim for relief." *Id*.

MCR 2.116(C)(10) provides that where, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, . . . the moving party is entitled to judgment or partial judgment as a matter of law." Because such a motion "tests the factual sufficiency of the complaint," it is proper to consider the "affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), [albeit] in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). If the nonmovant's evidence "fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Id*. at 120. Where the burden of proof at trial rests on the nonmoving party, as is the case here, the nonmoving party may not rely on mere allegations or denials in the pleadings, but must set forth specific facts showing that a genuine issue of material fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). When giving the benefit of reasonable doubt to the opposing party, if an issue upon which reasonable minds might differ is evident, a genuine issue of material fact exists. *Id*.

Plaintiffs Groninger argue that the federal patent which forms the foundation of their chain of title removes their property from the authority of defendant. They argue that any regulation of their land impairs their patent, which violates both the U.S. and Michigan constitutions. Further, they argue that defendant only has authority over property within the public domain and thus not the subject property because it was removed from the public domain by federal patent.

The Wetlands Protection Act (WPA), MCL 324.30301 *et seq*., protects wetlands and allows the state to administer a federal counterpart, the Clean Water Act, 33 USC 1251, *et seq*. *Huggett v Dep't of Natural Resources*, 232 Mich App 188, 194-195; 590 NW2d 747 (1998).[1] Under the WPA, defendant may enter premises upon either reasonable cause or by obtaining a search warrant. MCL 324.30314(2).

Under the WPA, a wetland is specifically defined as follows:

> (m) "Wetland" means land characterized by the presence of water at a frequency and duration sufficient to support, and that under normal circumstances does support, wetland vegetation or aquatic life, and is commonly referred to as a bog, swamp, or marsh, and which is any of the following:

> (i) Contiguous to the Great Lakes or Lake St. Clair, an inland lake or pond, or a river or stream.

---

[1] The WPA is part 303 of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq*.

(ii) Not contiguous to the Great Lakes, an inland lake or pond, or a river or stream; and more than 5 acres in size.

(iii) Not contiguous to the Great Lakes, an inland lake or pond, or a river or stream; and 5 acres or less in size if the department determines that protection of the area is essential to the preservation of the natural resources of the state from pollution, impairment, or destruction and the department has so notified the owner. [MCL 324.30301(m).]

This definition makes clear that the statute applies to any "land" bearing certain characteristics of water or aquatic life. There is no limitation on the types of land affected by the WPA, nor is there any distinction made between private, public, or federal lands. Further, not only does the definition of "person" under the act include "an individual," it also includes "an instrumentality or agency of this state, the federal government, an instrumentality or agency of the federal government, or other legal entity." MCL 324.30301(i). This broad definition evidences the intent for the WPA to apply to any land under the authority of the executive department, which would be any land in Michigan, whether it is federal, state, public, or private land.

Under the Michigan Constitution, no law "impairing the obligation of contract shall be enacted," Const 1963, art 1, § 10, while the federal constitution prohibits any state from passing any "Law impairing the Obligation of Contracts . . . ," US Const, art I, § 10. The Contract Clause protects "bargains reached by parties by prohibiting states from enacting laws that interfere with preexisting contractual arrangements." *Health Care Ass'n Workers Compensation Fund v Dir of the Bureau of Worker's Compensation*, 265 Mich App 236, 240; 694 NW2d 761 (2005). However, the clause is not absolute, but "must be accommodated to the inherent police power of the State to safeguard the vital interests of its people." *Energy Reserves Group, Inc v Kansas Power & Light Co*, 459 US 400, 410; 103 S Ct 697; 74 L Ed 2d 569 (1983). "[S]tate regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment." *Id*. at 411.

In analyzing a Contract Clause issue, this court utilizes a three-pronged test.

The first prong considers whether the state law has operated as a substantial impairment of a contractual relationship. The second prong requires that legislative disruption of contractual expectancies be necessary to the public good. The third prong requires that the means chosen by the Legislature to address the public need be reasonable. In other words, if the impairment of a contract is only minimal, there is no unconstitutional impairment of contract. However, if the legislative impairment of a contract is severe, then to be upheld it must be affirmatively shown that (1) there is a significant and legitimate public purpose for the regulation and (2) that the means adopted to implement the legislation are reasonably related to the public purpose. [*Health Care Ass'n*, 265 Mich App at 241 (citations omitted).]

Plaintiffs Groninger fail to satisfy this test. Foremost, any impairment by the WPA is minimal. Plaintiffs Groninger hold their land in fee simple and the permit requirement that may be necessary does not divest plaintiffs of any ownership interest in their land—they still hold title

against all comers. If a permit were required for filling or other activity related to driveway construction, plaintiffs Groninger could show a particularized injury sufficient to confer standing, but the permitting process is not a "substantial impairment" of plaintiffs' ownership interest, which is the foundational contractual relationship.

Further, even if the impairment were severe, the WPA embodies a significant and legitimate public purpose and permitting is reasonably related to that purpose. MCL 324.30302(1); *K & K Const, Inc v Dept of Environmental Quality*, 267 Mich App 523, 529-530, 553; 705 NW2d 365 (2005). Additionally, plaintiffs Groninger have not shown any reduction in the value of their property because defendant may enter the land to inspect whether it is wetland nor have they shown that any failure to issue a permit would reduce the value of their property. Even if they did, "[a] reduction in the value of the regulated property is insufficient, standing alone, to establish a compensable regulatory taking." *K & K Const, Inc*, 267 Mich App at 553, citing *Penn Central Transp Co v City of New York*, 438 US 104, 131; 98 S Ct 2646; 57 L Ed 2d 631 (1978).

Plaintiffs respond that the entire NREPA is "a contiguous act" and does not have "severable units" such that other areas of the act that differentiate between patented and unpatented land apply to the WPA and thus remove the patented land from the jurisdiction of defendant. Plaintiffs misconstrue the nature of the act. The overarching statutory scheme under NREPA was put in place by 1994 PA 451, which references part 303 as wetlands protection, but does not enact any provisions. See 1994 PA 451, Article III. NREPA was amended by 1995 PA 59 to add the provisions of the WPA. 1995 PA 59. The various enactments of the statutory parts illustrates a legislative intent that the different parts are distinguishable from one another.

Further, although NREPA generally defines the "department" as the Department of Natural Resources (DNR), MCL 324.301(b), control over implementation of the WPA was transferred in 1995 to the DEQ by Executive Reorganization Order No. 1995-16 (codified at MCL 324.99903). This authority was transferred out of the DEQ by Executive Order No. 2009-45[2] in art IV, § (A)(1)(aa). Subsequently Executive Order No. 2011-1[3] abolished that organizational structure and restored the DEQ with authority to administer the WPA. EO 2001-1, art IV, § (C)(1)(aa). That various parts of NREPA were passed as separate statutes illustrates that it functions as an umbrella statute for several distinct parts. The executive implementation of the act by different bodies, namely the DNR and defendant reinforces this conclusion. Thus, plaintiff's reliance on part 325 is misplaced, because that part does not implement, limit, or affect defendant's authority under the WPA.

Plaintiffs also argue that the proper enforcing authority is the DNR, not defendant, and that the power of the department is limited to land under the public domain. MCL 324.503(2). However, as noted above, authority under the WPA rests with defendant. Executive Order Nos.

---

[2] Also cited as Executive Reorganization Order No. 2009-31, and codified at MCL 324.99919.

[3] Also cited as Executive Reorganization Order No. 2011-1, and codified at MCL 324.99921.

1995-18[4]; 2011-1. Further, even if the statute cited applied, it only provides the general powers and duties of the department. It does not state that those are the *only* powers of the department. This is especially relevant given that the WPA empowers defendant in several other ways, including a permitting scheme, MCL 324.30312, and allowing entry onto private premises, MCL 324.30314(2). Also, as noted, the WPA defines wetlands in reference to any land the meets the qualifications, without limit to its status as patented land or unpatented land. MCL 324.30301(m).

Plaintiffs next argue that the subject property was severed from the public domain and public trust. Although Michigan has an interest in property in the public domain or held under public trust, those doctrines are irrelevant. The state statute at issue does not depend upon the public trust or the public domain for its authority. Rather, it extends to all land subject to the general police powers of the State of Michigan. Const 1963, art IV, § 52; MCL 324.30301(m). The WPA is a proper exercise of the police power and is explicitly recognized by Michigan's Constitution. Plaintiffs also argue that the proper enforcing authority is the DNR, not defendant, and that the power of the department is limited to land under the public domain. MCL 324.503(2). However, as noted above, enforcement of the WPA rests with defendant, which is not limited to land in the public domain. See MCL 324.30301(m).

Plaintiffs make a number of other arguments, which fail principally because defendant is a state regulator empowered by a state statute. Plaintiffs argue that the Clean Water Act, 33 USC 1251 *et seq.*, does not apply to the subject property, but whether it applies is irrelevant because defendant has authority under state law, MCL 324.30314(2), and need not look to federal authority. Additionally, the scope of congressional authority under the federal constitution is irrelevant because defendant relies on state law. Plaintiffs additionally argue that defendant is foreclosed from acting by the equal footing doctrine, but that doctrine only applies to land patented to a state, not land patented to a private individual. *United States v Alaska*, 521 US 1, 34-36; 117 S Ct 1888; 138 L Ed 2d 231 (1997); *United States v Texas*, 339 US 707, 716-717; 70 S Ct 918; 94 L Ed 1221 (1950). Finally, plaintiffs cite the Northwest Ordinance of 1787 but do not show how it is applicable to the matter at hand or why the Michigan Constitution of 1963 did not supersede it. See *Malcolm v City of East Detroit*, 437 Mich 132, 139; 468 NW2d 479 (1991); *Parise v Detroit Entertainment*, 295 Mich App 25, 28; 811 NW2d 98 (2011) ("[A] more recently enacted law has precedence over the older statute.").

In sum, plaintiffs many arguments do not create a legal claim on which relief can be granted and the trial court properly granted summary disposition in favor of defendant under MCR 2.116(C)(8) and (C)(10).

Affirmed.

/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause

---

[4] Also cited as Executive Reorganization Order No. 1995-16 and codified at MCL 324.99903.