*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ECI ENVIRONMENTAL CONSULTANTS AND
ENGINEERS, LLC,

UNPUBLISHED
March 30, 2023

Plaintiff-Appellant,

v

No. 361803
Oakland Circuit Court
LC No. 2020-185003-CB

HOUSE OF PROVIDENCE and ASSEMBLIES OF
GOD LOAN FUND,

Defendants-Appellees.

Before: CAVANAGH, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order granting summary disposition to defendant[1], House of Providence (HOP), under MCR 2.116(C)(8). Plaintiff alleges that it filed a complaint for breach-of-contract as well as to foreclose on a construction lien against defendant's property based on defendant's alleged refused to pay plaintiff the cost of its labor on defendant's property from June 2019, to August 2020. In this appeal, plaintiff contends the trial court erred in granting defendant summary disposition. For the reasons set forth in this opinion, we reverse the grant of summary disposition in favor of defendant and remand the matter to the trial court for further proceedings consistent with this opinion.

## I. BACKGROUND

This appeal arises from work defendant allegedly performed to plaintiff's property and the extent to which the parties had an agreement as to the scope and amount of work to be performed by plaintiff. Defendant contracted with plaintiff in April 2017, to provide environmental

---

[1] Although plaintiff named Assemblies of God Loan Fund (AGLF) in its appeal, plaintiff only appealed the trial court's grant of summary disposition to House of Providence and not the earlier grant of summary disposition to Assemblies of God Loan Fund. Therefore, references to "defendant" will be limited to House of Providence.

consulting services on defendant's property, including preparing a plan acceptable to the Michigan Department of Environmental Quality (MDEQ). Defendant sought to develop the subject property to remove toxins from the land and to facilitate the building of a foster home for at-risk youth. In June 2020, Oakland County was awarded a Brownfield Grant to fund defendant's redevelopment project by the Michigan Department of Environment, Great Lakes, and Energy (EGLE). Although there is a discrepancy on when plaintiff asserts defendant stopped paying for plaintiff's labor, plaintiff contends defendant has not compensated it for the work done on the property from June 2019 to August 2020. Defendant does not contest that plaintiff provided services, but contests it authorized plaintiff to continue working until August 2020.

Plaintiff obtained a construction lien on the property to obtain the outstanding balance it alleged it was owed. Soon after, plaintiff filed a complaint against defendant to foreclose on the construction lien under the Construction Lien Act (CLA), MCL 570.1101 *et seq.* and a claim for breach of contract.

Defendant moved for summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10). It argued plaintiff failed to state a claim for which relief may be granted because the property involves a residential structure and plaintiff did not provide an improvement as required under the relevant statutory provisions, citing MCL 570.1114. Defendant also alleged there was no written contract. Plaintiff responded that a written contract was not required, relying on its 2017 letter of engagement with defendant and an alleged oral contract, citing MCL 570.1107. Defendant also alleged that plaintiff's services did constitute an "improvement" as contemplated and defined by MCL 570.1104(6). The trial court granted defendant summary disposition under MCR 2.116(C)(8). The trial court also denied plaintiff's motion for reconsideration. This appeal followed.

## II. ANALYSIS

### A. CONSTRUCTION LIEN

In its appeal, plaintiff contends the trial court erred in granting summary disposition to defendant under MCR 2.116(C)(8) on two bases. First, plaintiff argues the trial court erred in relying on the wrong statutory provisions in its dismissal of plaintiff's request to foreclose on the construction lien. Second, plaintiff asserts the trial court erred in granting summary disposition in favor of defendant by failing to recognize plaintiff's implicit allegation of a breach-of contract claim in its complaint.

Defendant argues that summary disposition was justified because the subject property involves a residential structure, and plaintiff failed to sign a written contract. As a consequence, defendant argued, plaintiff cannot sustain the propriety of its construction lien or its enforcement. Further, even if the subject property is not a residential structure, environmental consulting services are not construed as an improvement on the land as contemplated by the statutory scheme. Defendant also disputes plaintiff's contention that it adequately pleaded a breach-of-contract claim that would separately sustain the litigation.

Our appellate courts review a decision on a motion for summary disposition de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "De novo review

means that we review the legal issue independently, without required deference to the courts below." *Wright v Genesee County*, 504 Mich 410, 417; 934 NW2d 805 (2019).

A court may grant a motion for summary disposition under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim on which relief can be granted." MCR 2.116(C)(8). In *El-Khalil*, 504 Mich at 159-160, our Supreme Court stated:

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery. [Citations and emphasis omitted.]

"A party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions." *Dalley v Dykema Gossett, PLLC*, 287 Mich App 296, 305; 788 NW2d 679 (2010). "When considering such a motion, the trial court must rely only on the pleadings." *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994), citing MCR 2.116(G)(5). "When an action is based on a written contract, it is generally necessary to attach a copy of the contract to the complaint. MCR 2.113(F). Accordingly, the written contract becomes part of the pleadings themselves, even for purposes of review under MCR 2.116(C)(8)." *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007). Further, "[q]uestions regarding the interpretation and application of statutes, including the Construction Lien Act, are reviewed de novo on appeal." *Stock Bldg Supply, LLC v Parsley Homes of Mazuchet Harbor, LLC*, 291 Mich App 403, 406; 804 NW2d 898 (2011).

"The Construction Lien Act has been held to have two purposes: (1) protecting the rights of lien claimants to payment for wages and materials and (2) protecting owners from paying twice for such services." *Old Kent Bank of Kalamazoo v Whitaker Constr Co*, 222 Mich App 436, 438-439; 566 NW2d 1 (1997), lv den 457 Mich 858 (1998). "It is to be liberally construed 'to secure the beneficial results, intents, and purposes' of the act." *Stock Bldg Supply, LLC*, 291 Mich App at 407, citing MCL 570.1302(1)[2].

MCL 570.1107(1) states:

---

[2] MCL 570.1302, states:

> (1) This act is declared to be a remedial statute, and shall be liberally construed to secure the beneficial results, intents, and purposes of this act. Substantial compliance with the provisions of this act shall be sufficient for the validity of the construction liens provided for in this act, and to give jurisdiction to the court to enforce them.

> (2) This act shall not be construed to prevent a lien claimant from maintaining a separate action on a contract.

Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property, as described in the notice of commencement given under section [MCL 570.1]108 or [MCL 570.1]108a, the interest of an owner who has subordinated his or her interest to the mortgage for the improvement of the real property, and the interest of an owner who has required the improvement. A construction lien acquired pursuant to this act shall not exceed the amount of the lien claimant's contract less payments made on the contract. [Footnote omitted.]

The CLA defines the term "contract" to mean "a contract, of whatever nature, for the providing of improvements to real property, including any and all additions to, deletions from, and amendments to the contract." MCL 570.1103(4). As is generally recognized:

When construing statutory language, the court must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined. Effect must be given to every word, phrase, and clause in a statute, and the court must avoid a construction that would render part of the statute surplusage or nugatory. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion. The courts may not read into the statute a requirement that the Legislature has seen fit to omit. [*LeFever v Matthews*, 336 Mich App 651, 662-663; 971 NW2d 672 (2021).]

Accordingly, in order to state a valid claim under the CLA, plaintiff must have pleaded there was a contract, "of whatever nature," which authorized plaintiff to provide an "improvement" on the property through August 2020. In turn, MCL 570.1104(6) defines "improvement" as

the result of labor or material provided by a contractor, subcontractor, supplier, or laborer, including, but not limited to, surveying, engineering and architectural planning, construction management, clearing, demolishing, excavating, filling, building, erecting, constructing, altering, repairing, ornamenting, landscaping, paving, leasing equipment, and installing or affixing a fixture or material, pursuant to a contract.

The CLA separately defines "actual physical improvement," which excludes certain activities or work. "Actual physical improvement" is defined as:

[T]he actual physical change in, or alteration of, real property as a result of labor provided, pursuant to a contract, by a contractor, subcontractor, or laborer which is readily visible and of a kind that would alert a person upon reasonable inspection of the existence of an improvement. Actual physical improvement does not include that labor which is provided in preparation for that change or alteration, such as surveying, soil boring and testing, architectural or engineering planning, or the preparation of other plans or drawings of any kind or nature. Actual physical

-4-

improvement does not include supplies delivered to or stored at the real property. [MCL 570.1103(1).]

Plaintiff argues, in dismissing the validity or enforcement of its construction lien claim, the trial court improperly relied on MCL 570.1114, which states, in relevant part:

A contractor does not have a right to a construction lien on the interest of an owner or lessee in a residential structure unless the contractor has provided an improvement to the residential structure under a written contract between the owner or lessee and the contractor and any amendments or additions to the contract are also in writing.

Instead, plaintiff contends the trial court should have relied on the language of MCL 570.1118, an enforcement provision, which states, in relevant part:

(1) An action to enforce a construction lien through foreclosure shall be brought in the circuit court for the county where the real property described in the claim of lien is located. . . . An action to enforce a construction lien through foreclosure is equitable in nature. . . .

(2) In an action to enforce a construction lien through foreclosure, the court shall examine each claim and defense that is presented and determine the amount, if any, due to each lien claimant or to any mortgagee or holder of an encumbrance and their respective priorities. The court may allow reasonable attorneys' fees to a lien claimant who is the prevailing party. The court also may allow reasonable attorneys' fees to a prevailing defendant if the court determines the lien claimant's action to enforce a construction lien under this section was vexatious.

Here, plaintiff did not undertake work for defendant related to the existing residential structure(s) on the property. Rather, the work was to prepare the physical site or land, through remediation of hazardous substances, to achieve suitability for future construction and use of the property to house children. Accordingly, the trial court's reliance of MCL 570.1114 was improper. Rather, the definitions of MCL 570.1107(1), regarding the rights of a contractor "who provides an improvement to real property" to a construction lien, in conjunction with MCL 570.1104(6) defining the types of labor that provide an "improvement" to property, are more appropriate to apply to the work performed by plaintiff. When viewed with the statutory definition of a "contract," which indicates a "contract" can be "of whatever nature," as long as it "provides an improvement to real property," MCL 570.1103(4), there is, at a minimum, a question of fact as to whether plaintiff's alleged work would be sufficient to qualify for a construction lien. We note that while MCL 570.1114 requires a written contract, MCL 570.1104(6) does not include a written requirement in its definition of a contract. "Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *LeFever*, 336 Mich App at 662-663. As such, the trial court erred in granting summary disposition under MCR 2.116(C)(8) on the basis of its misapprehension regarding the applicability and requirements of MCL 570.1114, to the exclusion of other provisions.

Defendant also argued in the trial court and in its appeal that plaintiff did not provide an "improvement" on the subject property as contemplated by the statute, precluding foreclosure of the construction lien. Under the CLA, the term:

"Improvement" means the result of labor or material provided by a contractor, subcontractor, supplier, or laborer, including, but not limited to, surveying, engineering and architectural planning, construction management, clearing, demolishing, excavating, filling, building, erecting, constructing, altering, repairing, ornamenting, landscaping, paving, leasing equipment, and installing or affixing a fixture or material, pursuant to a contract. [MCL 570.1104(6).]

In order to assist the trial court on remand, we remind the trial court to take into consideration:

When a statute uses a general term followed by specific examples included within the general term . . . the canon of statutory construction *ejusdem generis* applies. This canon gives effect to both the general and specific terms by treating the particular words as indicating the class, and the general words as extending the provisions of the statute to everything embraced in that class, though not specifically named by the particular words. [*Huggett v Dep't of Natural Resources*, 464 Mich 711, 718; 629 NW2d 915 (2001) (citation and quotation marks omitted).]

We additionally note that by using "including, but not limited to" in the provision of examples of conduct that constitute the type of labor (or materials) that comprise or lead to an "improvement," in the language of MCL 570.1104(6), the term "improvement" is broad in its meaning. We further note that the phrases "surveying" and "engineering and architectural planning" in MCL 570.1104(6) are instructive. Both forms of this type of labor involve expert services that provide the owner of the real property with greater insight or options on how to develop their property, and is defined in MCL 570.1106(2):

"Professional services" means services that are customarily and legally performed by or under the supervision or responsible control of design professionals in the course of their professional practice, including, but not limited to, programming, planning, surveying, site investigation, analysis, assessment, design, preparation of drawings and specifications, and construction administration services.

Given the specific terms, "surveying" and "engineering and architectural planning" contained within MCL 570.1104(6) allude to similar forms of labor engaged in by plaintiff, allowing an inference, and therefore a question of fact as to whether plaintiff's labor is contemplated by the statute. *Huggett*, 464 Mich at 718. "[S]urveying" and "engineering and architectural planning" involve the labor of experts providing an owner of real property with greater insight on how to develop its land. See MCL 507.1106(2). Arguably, the 2017 letter of engagement stated plaintiff's services were intended to assist defendant in developing the subject property for the benefit of building "residential housing and services for foster care children." Notably, the invoices submitted by plaintiff alleging the amounts owed, and Table 1 of the draft Brownfield Grant Work Plan provide detail of the work performed and associated fees.

From our review of the record, we conclude that plaintiff's work can best be described as an essential step in preparing defendant's land and structures for its stated purpose of housing children. As such, plaintiff's environmental consulting services could be construed as an "improvement," as contemplated by MCL 570.1104(6). Arguably, the broader language or application of MCL 570.1104(6) is buttressed by the very specific language of MCL 570.1103(1)'s definition of an "actual physical improvement," suggesting there is a recognition and distinction to be made. As such, the trial court erred when it granted defendant's summary disposition under MCR 2.116(C)(8), in reliance on MCL 570.1114.

## B. BREACH OF CONTRACT

Initially, it would seem the parties do not dispute some form of working or contractual relationship. However, the parties dispute whether plaintiff impliedly pleaded a breach-of-contract cause of action. In its appeal, plaintiff argues the trial court erred when it disregarded its implied breach-of-contract claim in its complaint and amended complaint, further stating that it was not required to specifically name the causes of action under which it was proceeding. Plaintiff is correct in its assertion that the court rules do not require a party to specifically name the causes of actions under separate counts. MCR 2.111(B)(1) only requires:

> (1) A statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend; and

> (2) A demand for judgment for the relief that the pleader seeks.

The trial court did not specifically address the breach-of-contract claim in its order granting defendant summary disposition. Rather, in granting summary disposition under MCR 2.116(C)(8), and in reliance on MCL 570.1114, the trial court foreclosed amendment of plaintiff's complaint, finding "an amendment here would not be justified." On the basis of the trial court's language, the futility of amendment was related to the inability to amend the complaint to alleviate the factual deficiencies necessary to meet the statutory requirements of MCL 570.1114, regarding a written contract, which we have concluded was erroneous.

"In Michigan, the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v Leja*, 187 Mich App 418, 422; 468 NW2d 58 (1991).

In its complaint, plaintiff references two forms of alleged contracts that authorized plaintiff's work, specifically the 2017 letter of engagement and an oral contract. The 2017 letter of engagement states, in relevant part:

> These services are intended to allow you to achieve your goal to provide residential housing and services for foster care children on the subject property.

> ECI will review all previous documentation available on the subject property, conduct a site reconnaissance, contact/meet with the Deputy Superintendent of Oxford, and meet with the Michigan Department of

-7-

Environmental Quality (MDEQ) Analyst who has authority over the site. Based upon information obtained from these sources, ECI will design a plan that is acceptable to MDEQ and that will allow you to build and further develop the property. The plan will include estimated hours required for its completion. Prior to implementation, the plan will be submitted to you for your approval and authorization to proceed. Subsequent to your approval, the plan will be implemented.

The immediate tasks are estimated to consume approximately 10 to 12 hours. Billing for all tasks will be at ECI's standard billing rate of $195.00 per hour. Travel is invoiced at $0.67/mile. An invoice detailing work activities will be submitted to you on the 4th Thursday of each month with payments due within 15 days of receipt of invoice.

The 2017 letter of engagement is of limited value to establish a contract that covers the charges and work alleged by plaintiff to have been performed over an extended period of time. Rather, the letter of engagement is more a discussion of the purpose for the work and the types of work that plaintiff will perform. Additionally, the 2017 letter of engagement specifically limits performance to "immediate tasks," the anticipated amount of time necessary to complete those tasks, and the amount to be paid on an hourly basis. The letter of engagement also specifies that invoices should be submitted on a monthly basis, with payment due within 15 days. This factor is relevant because of plaintiff's contention that its oral contract with defendant specifically involved alternative or modified terms that payments would not be required until a later point, when the grant had been obtained. As such, this document, standing alone, would be insufficient to create an obligation by defendant in the outstanding amount claimed by plaintiff of $287,803.30, or to even explain the undisputed payment by defendant to plaintiff of at least $152,071.30.

As such, the issue arises as to whether the parties had an oral contract that is enforceable for purposes of the construction lien.[3] This Court has explained:

In analyzing oral statements for contractual implications, a court must determine the meaning that reasonable persons might have attached to the language. In order to determine whether there was mutual assent to a contract, the court applies an objective test, looking to the expressed words of the parties and their visible acts. The court considers the relevant circumstances surrounding the transaction, including all writings, oral statements, and other conduct by which the parties manifested their intent. [*Barber v SMH(US), Inc*, 202 Mich App 366, 369-370; 509 NW2d 791 (1993) (quotation marks and citations omitted).]

There are a number of documents and memorandum that support the existence, at the very least, of an ongoing relationship and work to be performed between the parties. We note the September 26, 2019 writing setting forth defendant's grant of access to plaintiff and others to the property related to the application to secure the Brownfield Grant. Further, on August 7, 2020, a

---

[3] We recognize that in making a determination on the validity of the alleged oral contract, such a determination may be impacted by MCL 566.132(2)(1)(a), which indicates a contract is void if it cannot "be performed within 1 year from the making of the agreement."

draft of the Brownfield Grant Work Plan was prepared, the completion or development of which was pertinent to the 2017 letter of engagement, and identifying work to be performed by plaintiff. Defendant's e-mail on August 26, 2020, foreshadowed the termination of defendant's relationship with plaintiff, unless a formal, written contract was effectuated: "HOP appreciates all your prior hard work and effort, but before you proceed any further and as previously and repeatedly requested of ECI, we need ECI to execute and return the contract." Termination of a working relationship necessarily implies the existence of such a relationship. Lance Stokes, plaintiff's sole officer and employee, asserted, in an affidavit, despite the absence of a writing, that defendant instructed plaintiff to continue its work and efforts on defendant's behalf. On October 5, 2020, having failed to receive a signed contract from plaintiff, defendant retained another firm as its environmental services consultant going forward. This prompted plaintiff to respond, on October 15, 2020, with an invoice for unbilled services performed for defendant, seeking payment, and precipitating the filing of the construction lien.

Next, we address whether there exists within this record material questions of fact as to whether plaintiff has established a claim for breach-of-contract. To establish a breach-of-contract claim plaintiff must have alleged "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014), reh den 495 Mich 998 (2014). Our review of this matter is made difficult by plaintiff's inarticulate pleadings. While the clear focus of the complaint is on the construction lien, albeit indirectly, plaintiff does allege in paragraph 9 of the amended complaint that it was "retained" by defendant, and performed services for defendant in paragraph 10. Plaintiff alleged defendant refused to pay for those services in paragraph 13. In Paragraph 16, plaintiff asked for a money judgment, statutory attorney fees (MCL 570.1118(2)), and a judgment of foreclosure on the construction lien. While not explicitly stated using the terms breach-of-contract, use of the term "retained," coupled with the identification of a fee-for-service relationship that was not properly terminated or fulfilled, having failed to provide required remuneration, is sufficient notice of a breach-of-contract claim. MCR 2.111(B)(1).

Consequently, on remand the trial court will need to address the alternative statutory provisions set forth in this opinion coupled with the ability of plaintiff to establish a contractual obligation and its parameters. Along with such considerations, the trial court should revisit the question of whether to permit amendment of plaintiff's complaint to include a more specific claim of breach-of-contract.

Given our determination of the need to reverse the trial court's grant of summary disposition to defendant, and our remand to that court for further proceedings consistent with this opinion, we need not consider plaintiff's remaining arguments on appeal.

Reversed and remanded.  We do not retain jurisdiction. No costs are awarded.  MCR 7.219(A).

/s/ Mark J. Cavanagh
/s/ Jane E. Markey
/s/ Stephen L. Borrello