*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES NAIRNE,

                Petitioner-Appellee,

v

DEPARTMENT OF ENVIRONMENT, GREAT
LAKES, AND ENERGY,

                Respondent-Appellant.

FOR PUBLICATION
January 26, 2026
2:39 PM

No. 367091
Leelanau Circuit Court
LC No. 2023-011001-AA

Before: ACKERMAN, P.J., and YOUNG and KOROBKIN, JJ.

ACKERMAN, P.J.

To obtain a permit to build on a wetland, an applicant must demonstrate that no feasible and prudent alternative exists to the proposed project. Petitioner sought such a permit to construct a residence. After a contested administrative hearing, an administrative law judge (ALJ) found that petitioner had impermissibly narrowed the stated purpose of the project so as to foreclose consideration of feasible and prudent alternatives and that nearby property titled in the name of a corporation wholly owned by petitioner constituted one feasible and prudent alternative.

On judicial review, the circuit court took a different view. It concluded that the ALJ erred in both respects, set aside the agency's decision, and ordered a remand for further proceedings. We hold that the ALJ's determination that petitioner impermissibly narrowed the project purpose was supported by substantial evidence and should not have been disturbed. At the same time, we agree with the circuit court that the ALJ erred as a matter of law by disregarding the separate legal existence of the corporation and treating its property as owned by petitioner for purposes of the alternatives analysis. We therefore affirm in part, reverse in part, and remand for further proceedings.

I.  FACTS

Petitioner James Nairne has a background in the energy sector, much of it in Texas.  He later relocated with his wife to a more remote area in Leelanau County.  Petitioner is the sole shareholder of Green Bridge Holdings, a Wyoming corporation that acquired a 14.88-acre lakefront parcel near Northport and constructed a home on the property.  Title to that parcel has since been transferred to petitioner personally.

Petitioner has continued to acquire land in the area.  He owns an additional 24 acres immediately to the east (referred to as "Parcel A" and "Parcel D") and a half-acre parcel immediately to the north (referred to as "Parcel B").  Green Bridge also owns a 47.7-acre parcel further east, which is known as the "Finger Farm."  Petitioner seeks to build a second home on Parcel B "to expand our family compound" and to "have room for guests to stay there instead of in our house."  The proposed location of the second home, however, is within a wetland.  Development in a wetland is prohibited absent a permit issued by respondent, the Department of Environment, Great Lakes, and Energy.  MCL 324.30304(c).

In 2020, petitioner applied to respondent for a wetland development permit.  In a letter from respondent's Water Resources Division, petitioner was advised that his application was denied because "the proposed project will have significant adverse effects on the natural resources and public interest associated with [the] wetland."  Petitioner then exercised his right under MCL 324.30319(2) to a formal hearing before an administrative law judge.  At that hearing, petitioner testified that the purpose of the project was "[t]o build a waterfront family home that I can bring my children and my grandchildren and guests to and be within a couple hundred feet of our house."  He also testified that his dealings with Green Bridge were "very guarded so that you don't have people piercing corporate veils for liability purposes" and that he and his wife "paid every dollar of the cost of this house to the company when we transferred it."

Following the hearing, the ALJ issued an extensive opinion concluding that petitioner failed to satisfy the standard for issuance of a wetland development permit under MCL 324.30311(1).  Specifically, the ALJ concluded that petitioner could not show "that the issuance of a permit is in the public interest."  That conclusion rested on several grounds, many of which involved scientific findings about the project's ecological impact.  The present appeal, however, concerns the ALJ's analysis of feasible and prudent alternatives.

Consideration of feasible and prudent alternatives is required under multiple provisions governing the issuance of a wetland development permit.  In determining whether a proposed activity is "in the public interest," respondent must consider "[t]he availability of feasible and prudent alternative locations and methods to accomplish the expected benefits from the activity." MCL 324.30311(2)(b).  In addition, "[a] permit shall not be issued unless the applicant also shows" that "[a] feasible and prudent alternative does not exist."  MCL 324.30311(4).[1]

---

[1] Under MCL 324.30311(4), "[a] permit shall not be issued unless" the applicant shows either that "[t]he proposed activity is primarily dependent upon being located in the wetland" or that "[a]

-2-

When analyzing feasible and prudent alternatives, respondent may consider "a property not presently owned by the applicant which could reasonably be obtained." MCL 324.30311(5). Under certain conditions, however, "there is a rebuttable presumption that alternatives located on property not presently owned by the applicant are not feasible and prudent." *Id*. Respondent has also promulgated a rule providing that a permit applicant may not define a project so narrowly as to foreclose meaningful consideration of alternatives:

> A permit applicant shall completely define the purpose for which the permit is sought, including all associated activities. An applicant shall not so narrowly define the purpose as to limit a complete analysis of whether an activity is primarily dependent upon being located in the wetland and of feasible and prudent alternatives. The department shall independently evaluate and determine if the project purpose has been appropriately and adequately defined by the applicant, and shall process the application based on that determination. [Mich Admin Code, R 281.922a(4).]

In analyzing feasible and prudent alternatives, the ALJ made two determinations relevant to this appeal. First, the ALJ concluded that petitioner had "attempted to narrow his project purpose to development along the waterfront of Lake Michigan." Although petitioner testified at the hearing before the ALJ that the purpose of the project was to "build a waterfront family home," his permit application stated only that the purpose was "private residential development for full-time occupancy," a description the ALJ observed did not "stress that the residential development must occur on a lakefront." The application also reflected that petitioner had considered building on Parcels A and D but rejected those locations "due to [the] requirement to cross steep slope with 'hanging' wetlands/seeps," rather than because they were not located on a lakefront. The ALJ concluded that "during the course of the contested case, [petitioner's] project purpose evolved" to make lakefront development an essential requirement of the project and held that he would "treat the project purpose as the construction of a single-family home." In light of that conclusion, the ALJ held that it would be a feasible and prudent alternative for petitioner to build on Parcel A, even though Parcel A is not lakefront property.

Second, the ALJ determined that petitioner should be treated as the owner of the Finger Farm for purposes of the feasible and prudent alternatives analysis because he is the sole shareholder of Green Bridge Holdings. In reaching that conclusion, the ALJ cited an example of this Court's caselaw on piercing the corporate veil, *Green v Ziegelman*, 310 Mich App 436; 873 NW2d 794 (2015), and reasoned:

> It makes no sense to allow Mr. Nairne to shield from feasible and prudent alternative analysis all lands he owns by this corporation. Such an interpretation invites improper attempts by individuals to assign lands to a corporation in order to avoid the strictures of Part 303. Therefore, when an applicant owns 100% of a corporation that owns real estate in Michigan, the legal fiction [of corporate

---

feasible and prudent alternative does not exist." Because petitioner conceded in the proceedings below that the proposed project is not wetland dependent, only the existence of feasible and prudent alternatives is relevant.

personhood] should be ignored for purposes of determining whether feasible and prudent alternative locations exist. Therefore, I conclude, as a Matter of Law, that, under such circumstances, the 100% shareholder shall be treated as the owner of the property for purposes of feasible and prudent alternatives analysis. Hence, the rebuttable presumption set forth in § 30311(5) is not available for lands owned by Green Bridge.

Based on these findings, the ALJ concluded that the Finger Farm constituted a feasible and prudent alternative location for the proposed home, as it was nearby and offered views of Lake Michigan. Because a feasible and prudent alternative existed, issuance of the permit was precluded under MCL 324.30311(4)(b).

Petitioner sought further review of the ALJ's decision. He first sought review by the Environmental Permit Review Commission under MCL 324.1317, which affirmed the ALJ's decision. Petitioner then sought judicial review in the Leelanau Circuit Court under MCL 24.303(1). Before the circuit court, petitioner challenged several aspects of the ALJ's decision, including the ALJ's conclusions that the proposed project would "cause an unacceptable disruption to the aquatic resources" or "have adverse effects on ecological values and wildlife." Relevant here, petitioner also challenged the ALJ's determinations that (1) he had impermissibly narrowed his project purpose to a lakefront residence, and (2) he should be treated as the owner of the Finger Farm because he is the sole shareholder of Green Bridge Holdings, which holds title to that property.

The circuit court ruled in petitioner's favor on both of these issues. With respect to the project purpose, the court acknowledged that Rule 281.922a(4) authorizes respondent—and therefore the ALJ—to assess whether an applicant has improperly narrowed the project purpose. The ALJ's finding relied on the discrepancy between petitioner's initial application, which described the project purpose as "private residential development for full-time occupancy," and his hearing testimony describing the project as "a waterfront family home." The circuit court disagreed:

> [T]he problem for me is in reviewing what happened, and comparing them to the case law that's been provided, it doesn't seem that there was anything inappropriate or sort of an attempt at malfeasance based on what the applicant was doing with that change, it's simply more specifically identified what he was trying to do. It wasn't just building a home somewhere in Leelanau County, it was building the home where he wanted to.

The circuit court likewise rejected the ALJ's conclusion that petitioner should be treated as the owner of the Finger Farm. The court noted that the ALJ had relied on this Court's piercing-the-corporate-veil caselaw but emphasized that under that caselaw, courts may pierce the corporate veil only "to avoid fraud or injustice." *Green*, 310 Mich App at 451. The circuit court concluded that no such showing had been made here:

> The case law that was even cited by the ALJ, indicated there had to be some subversion, or it basically had to be created so that a fraudulent transfer could take place, those kinds of things; there is no evidence of that in this case. And, there

-4-

was no specific finding that it was done to subvert justice, but it certainly at least implied based on the conclusions the ALJ made. My understanding from reviewing the materials, this is a corporation that was formed in 2010 by the appellant. It wasn't created last minute to sort of transfer land holdings and do those kinds of things.

Having resolved these two issues in petitioner's favor, the circuit court did not address petitioner's remaining challenges to the ALJ's decision. As the court explained, its rulings "really sort of gut[ted] the basis from which the ALJ then made further determinations," making it difficult to "make an evaluation" of the ALJ's remaining findings. The circuit court therefore concluded that the case "need[ed] to be remanded to the ALJ first to determine what analysis the ALJ would do based on those determinations because it impacts the feasibility and prudent analysis." Respondent then sought leave to appeal, which this Court granted.

## II. STANDARD OF REVIEW

Under MCL 24.306(1), a circuit court may set aside an agency decision on several grounds. Some—such as when the agency's decision is "[i]n violation of the constitution or a statute" or "[i]n excess of the statutory authority or jurisdiction of the agency," MCL 24.306(1)(a), (b)— present legal questions that the circuit court reviews de novo. An agency decision may also be set aside if it is "[n]ot supported by competent, material and substantial evidence on the whole record." MCL 24.306(1)(d). Substantial evidence is "the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion" and "consists of more than a scintilla of evidence, [but] it may be substantially less than a preponderance." *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994).

When an administrative decision is appealed to this Court, the inquiry shifts. As we have explained:

> [W]hen reviewing a lower court's review of agency action this Court must determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings. This latter standard is indistinguishable from the clearly erroneous standard of review that has been widely adopted in Michigan jurisprudence. As defined in numerous other contexts, a finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made. [*Boyd v Civil Serv Comm*, 220 Mich App 226, 234-235; 559 NW2d 342 (1996).]

*Boyd* thus establishes a bifurcated framework. When the issue is whether the agency complied with statutory or constitutional requirements, the circuit court must apply de novo review, and in reviewing the circuit court's decision, appellate courts similarly apply de novo review. See, e.g., *Clam Lake Twp v Dep't of Licensing & Regulatory Affairs*, 500 Mich 362, 371-373; 902 NW2d 293 (2017) (applying de novo review to an agency's interpretation of its statutory authority). By contrast, when the issue concerns the agency's factual determinations, the circuit court applies the substantial evidence test. Our review is then limited to determining whether the circuit court

"misapprehended or grossly misapplied" that test, a standard that is "indistinguishable from the clearly erroneous standard of review." *Boyd*, 220 Mich App at 234.

### III. ANALYSIS

As noted, MCL 324.30311(4)(b) required petitioner to demonstrate that "[a] feasible and prudent alternative does not exist" to obtain a wetland development permit. The ALJ concluded that feasible and prudent alternatives existed because, contrary to petitioner's testimony, the project need not be a lakefront residence and because nearby land owned by Green Bridge Holdings, which the ALJ attributed to petitioner, could serve as an alternative location. The circuit court reversed both determinations, and respondent now challenges those rulings.

The caselaw interpreting the "feasible and prudent alternative" requirement in MCL 324.30311 is sparse. The current wetland protection act—Part 303 of the Natural Resources and Environmental Protection Act, MCL 324.101 *et seq.*—is a recodification of the former Wetland Protection Act, MCL 281.701 *et seq.* See *Huggett v Dep't of Natural Resources*, 464 Mich 711, 715 n 1; 629 NW2d 915 (2001). The same concepts were addressed in former MCL 281.709, under which this Court held that "[a] 'feasible' alternative is one that is 'capable of being put into effect or accomplished; practicable' or 'capable of being successfully utilized; suitable,' " while " '[p]rudent' is defined as 'exercising sound judgment.' " *Friends of Crystal River v Kuras Props*, 218 Mich App 457, 466; 554 NW2d 328 (1996).

### A. PROJECT NARROWING

Determining whether a feasible and prudent alternative exists necessarily requires identifying the project to which alternatives are being compared. In the first instance, the permit application defines the purpose of the proposed project. But if an applicant were permitted to define the project so narrowly that no alternative could reasonably satisfy it, the statutory requirement to consider feasible and prudent alternatives would be rendered meaningless. For that reason, Rule 281.922a(4) provides that an applicant may not "so narrowly define the purpose as to limit a complete analysis of . . . feasible and prudent alternatives" and authorizes the department to "independently evaluate and determine if the project purpose has been appropriately and adequately defined."

Whether an applicant has impermissibly narrowed a project purpose under Rule 281.922a(4) is a factual determination. For example, in this case it turns on the content of the permit application, the applicant's testimony, and the reasonable inferences to be drawn from the record as a whole. The circuit court therefore reviews that determination under the substantial evidence test.

Here, the ALJ concluded that petitioner had attempted to narrow the project purpose during the contested case by characterizing the project as a "waterfront family home." That conclusion was supported by record evidence. Petitioner's permit application described the project purpose as "private residential development for full-time occupancy" and did not indicate that the residence must be located on the waterfront. The application further reflected that petitioner had considered building on Parcels A and D but rejected those locations due to "steep slope[s] with 'hanging' wetlands/seeps," not because they lacked lakefront access. From this record, the ALJ reasonably

determined that petitioner's hearing testimony did not "completely define" the project purpose within the meaning of Rule 281.922a(4) and that the appropriate project purpose was the construction of a single-family home.

The circuit court set aside this determination based on its view that petitioner had not acted "inappropriate[ly]" or engaged in "malfeasance" and that his testimony merely "more specifically identified what he was trying to do." In doing so, however, the circuit court substituted its own assessment of petitioner's credibility and intent for that of the ALJ. That is not the role of a reviewing court applying the substantial evidence test.

Under that test, the question is not whether the circuit court would have drawn the same inference from the record but whether the agency's determination was supported by "the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion." *Payne*, 444 Mich at 692. Because the ALJ's finding that petitioner had impermissibly narrowed the project's purpose was supported by such evidence, the circuit court clearly erred by setting it aside.

## B. PIERCING THE CORPORATE VEIL

The next question is whether the Finger Farm—which is titled in the name of Green Bridge Holdings, a corporation petitioner controls as its sole shareholder—may properly be treated as an alternative for purposes of the wetland permit analysis. The ALJ concluded that it could, reasoning that petitioner's status as the corporation's sole shareholder justified treating him as the owner of the property. We agree with the circuit court that the ALJ erred in its legal reasoning.

In performing a feasible and prudent alternative analysis, respondent is expressly allowed to consider parcels "not presently owned by the applicant which could reasonably be obtained." MCL 324.30311(5). The statute also establishes a "rebuttable presumption that alternatives located on property not presently owned by the applicant are not feasible and prudent" under certain circumstances. *Id*. The statute thus distinguishes between property owned by the applicant and property owned by others, while allowing the presumption to be overcome through appropriate factual findings.

Here, it is undisputed that petitioner is not the record title holder of the Finger Farm. The property is owned by Green Bridge Holdings, a separate legal entity. The ALJ nevertheless concluded as a matter of law that petitioner "shall be treated as the owner of the property for purposes of feasible and prudent alternatives analysis" because he is the corporation's sole shareholder. In reaching that conclusion, the ALJ cited one of this Court's piercing-the-corporate-veil cases, *Green*, 310 Mich App at 436.

The circuit court correctly concluded that this analysis was flawed. As *Green* explains, "the fiction of a distinct corporate entity separate from the stockholders is a convenience introduced in the law to subserve the ends of justice," but "[w]hen this fiction is invoked to subvert justice, it is ignored by the courts." *Id*. at 451 (cleaned up). A party seeking to pierce the corporate veil "must prove (1) control by the parent to such a degree that the subsidiary has become its mere instrumentality; (2) fraud or wrong by the parent through its subsidiary; and (3) unjust loss or injury to the claimant." *Id*. at 455 (cleaned up).

No such findings were made here. The ALJ did not find that Green Bridge was used to perpetrate fraud, evade legal obligations, or otherwise subvert justice.[2] Without such findings, the ALJ could not simply disregard the corporation's separate legal existence. At most, the ALJ expressed a generalized concern that allowing petitioner to rely on corporate ownership could invite abuse in other cases. That concern, however, cannot substitute for the findings required to pierce the corporate veil in this one.

Because petitioner does not presently own the Finger Farm and the record does not support piercing the corporate veil, the rebuttable presumption of MCL 324.30311(5) applies. The ALJ erred by treating that presumption as categorically inapplicable based solely on petitioner's ownership interest in Green Bridge.

That leaves open the question of whether the presumption has been rebutted by evidence that the property could reasonably be obtained and would constitute a feasible and prudent alternative. Respondent argues that it has rebutted that presumption, citing record evidence that petitioner has de facto control of the property such that it is available for his use. Although respondent appears to make a compelling case, ultimately this is a factual question that must be addressed in the first instance by the agency.

IV. CONCLUSION

We hold that determinations concerning whether a wetland permit applicant has impermissibly narrowed a project purpose under Rule 281.922a(4), and whether the rebuttable presumption set forth in MCL 324.30311(5) has been overcome, are factual inquiries subject to review under the substantial evidence standard.

Here, the ALJ's determination that petitioner impermissibly narrowed the project purpose was supported by substantial evidence, and the circuit court erred by setting it aside after substituting its own credibility determinations. By contrast, we agree with the circuit court that the record does not support piercing the corporate veil and that the ALJ therefore erred as a matter of law by disregarding the separate legal existence of Green Bridge Holdings and treating the rebuttable presumption of MCL 324.30311(5) as categorically inapplicable. Because petitioner does not presently own the Finger Farm, there is a rebuttable presumption that the property is not a feasible and prudent alternative location, and whether that presumption has been overcome must be determined through factual findings by the ALJ in the first instance.

Accordingly, we reverse the circuit court's decision insofar as it set aside the ALJ's project-narrowing determination, affirm its decision insofar as it rejected the ALJ's treatment of the Finger

---

[2] Nor is it clear whether the use of the corporate form can cause "unjust loss or injury to" respondent within the meaning of *Green*.

-8-

Farm as property owned by petitioner, and remand for further proceedings not inconsistent with this opinion.[3]

/s/ Matthew S. Ackerman
/s/ Adrienne N. Young
/s/ Daniel S. Korobkin

---

[3] Respondent's counsel represented at oral argument that if respondent prevailed on either of the issues presented, the remainder of petitioner's appeal in the circuit court would be moot. While that contention appears plausible in light of petitioner's burden to show that "[a] feasible and prudent alternative does not exist," MCL 324.30311(4)(b), because petitioner was not present at argument to respond to that assertion, we remand to the circuit court to determine whether any remaining issues are moot. Our remand is without prejudice to the circuit court concluding that a remand to the ALJ is unnecessary or that petitioner's remaining issues on appeal are otherwise moot.